UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAY HORSE, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br>　　　v.<br>DISTRICT OF COLUMBIA, *et al.*,<br>　　　　　　　　　Defendants. | No. 1:17-cv-01216 (ABJ) |

**MOTION FOR LEAVE TO CONDUCT LIMITED EXPEDITED DISCOVERY
FOR THE PURPOSE OF IDENTIFYING "JOHN DOE" DEFENDANTS**

On July 7, 2017, Plaintiffs filed, contemporaneous with service of the complaint, a motion for expedited discovery to identify the "John Doe" defendants. On July 11, the Court denied the motion without prejudice to refiling after defendants' counsel entered their appearances.

Pursuant to the Court's order, and after extensive, good-faith but unsuccessful negotiations with Defendants in an effort to avoid motion practice, Plaintiffs hereby move, pursuant to Fed. R. Civ. P. 26(d)(1), for an Order allowing them to take limited expedited discovery from the District of Columbia for the purpose of identifying the Defendants who are listed as "Officer John Doe" and similar fictitious names in the Complaint because their identities are unknown.

As alleged in the Complaint, all of these unnamed defendants are current or former D.C. Metropolitan Police Department (MPD) officers. The proposed discovery would consist of a set of three interrogatories, the text of which is attached as Exhibit A.

Plaintiffs seek this information so that they can amend their complaint, serve the Doe defendants, and prosecute this action. Expedition is required because less than six months remain

1

before a one-year statute of limitations will run on several of the claims in the Complaint, and identifying all of the Doe defendants may take considerable time and effort.

Defendants' counsel have authorized us to represent that Defendants consent to proposed Interrogatories Nos. 2 and 3, except for the subparts that seek photographs of MPD officers. Defendants do not consent to proposed Interrogatory No.1.

## FACTS

As the Complaint in this action alleges, the four plaintiffs were in the District of Columbia for the January 20, 2017 inauguration of Donald Trump. Plaintiffs Elizabeth Lagesse and Milo Gonzalez came to exercise their constitutional rights to express disapproval of the new President. Plaintiff Shay Horse, a photojournalist, came to photograph the demonstrations. Plaintiff Judah Ariel served as a legal observer to the inauguration's protests. During one of the demonstrations, several acts of vandalism occurred. In response, the MPD rounded up and arrested hundreds of people, most of whom had engaged in no illegal activity. In this action, each of the plaintiffs seeks relief for constitutional, statutory, and common law violations arising out of one or more of the following: arrest without probable cause; unjustified use of pepper-spray; excessively tight handcuffing; prolonged denial of food, water, and access to toilets; and invasive manual rectal searches.

The Complaint alleges that Defendant MPD Officers used non-lethal weapons against Plaintiffs and detained them unjustifiably. Defendant Officers deployed various non-lethal weapons against demonstrators who were not engaged in criminal acts, Complaint ¶¶ 27-29, 35, and gave chase as the demonstrators fled. *Id.* ¶ 31. A Defendant Officer pepper-sprayed Plaintiff Horse while Mr. Horse was photographing the scene. *Id.* ¶¶ 23-25. Defendant Officers blocked the egress of demonstrators who were trying to flee from the police violence. *Id.* ¶ 40. Others

blocked fleeing demonstrators and corralled them into a "kettle" without having probable cause to believe that each detained individual had engaged in criminal acts, and without the ability to distinguish between those who had and those who had not. *Id.* ¶¶ 41-43, 45.

Once in the kettle, Defendant Officers treated Plaintiffs with unnecessary brutality. Defendant Officers deployed pepper spray and tear gas against individuals and groups in the kettle, *id.* ¶ 56. After Plaintiffs had been in the kettle for hours, *id.* ¶ 55, Defendant Officers denied Plaintiffs' requests for access to toilets as well as both food and water, even as the officers discarded edible food in their view. *Id.* ¶¶ 65, 67, 71. Defendant Officers purposely slowed down the formal arrests of the detainees to maximize detainees' discomfort. *Id.* ¶¶ 74-75. As detainees waited to be arrested, Defendant Officers pepper-sprayed a crowd of peaceful individuals observing the kettle, including Plaintiff Ariel, a legal observer, *id.* ¶ 76, 84, 86. Defendant Officers pursued the crowd as it fled from the pepper-spray, and Defendant Officers continued to spray indiscriminately. *Id.* ¶¶ 88-89.

Upon arresting Plaintiffs, Defendant Officers were also unnecessarily degrading. Defendant Officers ziptied two of the Plaintiffs' hands tightly enough to cause numbness and bleeding, ¶¶ 94, 97, and were unresponsive to Plaintiffs' complaints of pain. ¶¶ 95, 98. The arrestees were kept in zipties for hours. *Id.* ¶¶ 96, 99. Once at an MPD facility, one Defendant Officer conducted invasive rectal searches of Plaintiffs Horse and Gonzalez while other officers watched and laughed. *Id.* ¶¶ 115, 118, 121, 123. In the process, this officer grabbed and yanked on Plaintiff Horse's testicles and fondled Plaintiff Gonzalez's, *id.* ¶¶ 116, 120, wiggled his finger inside Plaintiff Horse's rectum, *id.* ¶ 119, and did not change gloves between the rectal searches of the Plaintiffs and other arrestees. *Id.* ¶ 125.

Defendant Supervisory Officers (whom the complaint calls "John/Jane Soe" defendants to distinguish from the "Doe" defendants) directed and oversaw the various unconstitutional actions of the Doe defendants. *Id.* ¶¶ 30, 36, 58, 75, 86. Additionally, a group of Defendant Supervisory Officers ordered that Plaintiffs Horse and Lagesse be kettled without "probable cause to believe that a significant number or percentage of the persons located in the area or zone have committed unlawful acts" and without "hav[ing] the ability to identify those individuals." *Id.* ¶¶ 44-46.

The identities of the officers who committed these constitutional violations and the supervisors who commanded, allowed, and/or approved of those actions are unknown, except for Defendant Newsham.

## PROCEDURAL HISTORY

Over the course of nearly four weeks, Plaintiffs have participated in extensive good faith negotiations with Defendants concerning the scope of the discovery requests. In an effort to arrive at mutually agreeable limited discovery, Plaintiffs made significant concessions and narrowed considerably their proposed discovery requests. Plaintiffs originally proposed twelve discovery requests — ten document requests and two interrogatories. Through a series of telephone and email discussions, Plaintiffs worked to address Defendants' concerns about breadth and to tailor their requests so as to obtain the needed information in the least burdensome manner and accommodating Defendants' preference for interrogatories over document requests.

Plaintiffs now seek to pose to Defendants just three interrogatories, which call for lists of identifying information and photographs of (1) the officers who were present and on duty in the area where one or more Plaintiffs were pepper-sprayed, detained, and denied basic needs in detention; (2) the officers who arrested the Plaintiffs and those who ordered their arrests; and (3)

the officers who conducted searches at the facility at which Plaintiffs Horse and Gonzalez endured unlawful rectal searches. Plaintiffs and Defendants were able to reach agreement as to items (2) and (3), except regarding the production of photographs. Defendants refused to consent to interrogatory one or to provide any officer photographs; Defendants offered as an alternative to collect and allow viewing of the photographs for inspection at MPD.

In response to Defendants' concerns, Plaintiffs offered to agree to a protective order prohibiting the use of the expedited discovery materials for any purpose other than the instant litigation and prohibiting those materials from leaving Plaintiffs attorneys' office. Defendants again refused to consent.

## ARGUMENT

Fed. R. Civ. P. 26(d)(1) provides that "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." Plaintiffs seek an order authorizing them to seek immediate discovery from Defendant District of Columbia regarding the true identities of the unknown Defendant Officers and Supervisory Officers.

There is broad agreement that a district court should grant discovery to allow a plaintiff to obtain information necessary to identify Doe defendants. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (reversing and remanding a dismissal because "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds"); *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010) ("Courts do grant an exception to [the rule against entertaining a suit unless defendants have been served] for 'John Doe' defendants, but only in situations where the otherwise unavailable identity of the defendant

will be made known through discovery.") (citing *Gillespie*); *Chung v. U.S. Dept. of Justice*, No. 00-cv-1912 (TFH), 2001 WL 34360430, at *6-8 (D.D.C. 2001), *aff'd in part, rev'd in part on other grounds, and remanded*, 333 F.3d 273 (D.C. Cir. 2003) (denying motion to dismiss *Bivens* suit where "discovery could reasonably be expected to help [plaintiff] identify [defendants] by name, permitting him to properly perfect service on them"); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (finding error in the dismissal of a § 1983 action against unnamed defendants "simply because Wakefield was not aware of Doe's identity at the time he filed his complaint" where the information was discoverable); *Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981) (ruling that a plaintiff's "distinct disadvantage in trying to discover the identity of those who were directly responsible" for his treatment "should not be used to prevent him from seeking relief on an otherwise meritorious claim"); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ("Dismissal is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention.").

Necessarily, such discovery must take place promptly, for until the defendants are identified and served, the lawsuit cannot proceed against them. Accordingly, this Court routinely grants limited expedited Doe discovery when plaintiffs make a showing of good cause. *See, e.g.*, *Malibu Media, LLC v. John Doe*, 177 F. Supp. 3d 554, 558 (D.D.C. 2016); *Warner Bros. Records, Inc. v. Does 1-6*, 527 F. Supp. 2d 1 (D.D.C. 2007); *LeFace Records LLC v. John Does 1-51*, No. 08-cv-1569 (CKK), 2008 WL 4517178, at *1 (D.D.C. Oct. 6, 2008); *see generally Hartley v. Wilfert*, 931 F. Supp. 2d 230, 233 (D.D.C. 2013) (explaining that where a defendant's identity is unknown, "[t]he proper course … is for Plaintiff to direct her discovery requests to deciphering this officer's identity"); *see also Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 390 n.2 (1971) (noting that the district court had ordered the unknown-named defendants to

6

be served). Indeed, as this Court has recognized, the names of unknown defendants are "not only relevant but crucial to the prosecution of plaintiffs' claims." *Warner Bros.*, 527 F. Supp. 2d at 2.[1]

The facts pled in Plaintiffs' complaint demonstrate good cause for expedited discovery. First, the information is crucial to prosecuting Plaintiffs' claims. Second, the limited breadth of the requested discovery is narrowly tailored to its purpose. Third, the desired information is likely to be found. And fourth, the requested discovery will not be unduly burdensome.

1. The information Plaintiffs seek is crucial to prosecuting their claims before statutes of limitations run, and the litigation cannot go forward against these defendants without it. Although Plaintiffs' claims under 42 U.S.C. § 1983 have three-year limitation periods, *see Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012), plaintiffs' common-law claims for false arrest and imprisonment, and for assault and battery, have one-year limitation periods. *See* D.C. Code § 12-301(4). All of the unknown Defendants are named in at least one of these claims.[2] Because the events at issue occurred on January 20, 2017, Plaintiffs need to name the individual defendants in an amended complaint by January 20, 2018.

2. The requested discovery is narrowly tailored to its limited purpose. In order to uncover Defendants' true names, Plaintiffs have drafted three simple interrogatories (attached as exhibit A), which call for lists of identifying information and photographs of (1) the officers who were present and on duty in the area where one or more Plaintiffs were pepper-sprayed, detained, and

---

[1] In *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990 (D.C. Cir. 2014), the court of appeals held that "Doe" discovery was improper where it was clear that the court did not have personal jurisdiction over most of the 1,058 unknown defendants, and where more than 1,000 unrelated defendants were not properly joined in the same lawsuit. Those defects are not present in this case, where all the unnamed defendants were employed by the MPD on January 20, and acted as a group under the direction of Defendant Newsham.

[2] Claim 3 for false arrest and imprisonment is against Defendants Doe 61-140 and Soe 11-20; Claim 7 for assault and battery is against Defendants Doe 1-60 and 91-149 and Soe 1-10 and 16-20; and Claim 15 for assault and battery is against Defendant Doe 150.

denied basic needs in detention; (2) the officers who arrested the Plaintiffs and those who ordered their arrests; and (3) the officers who conducted searches at the facility at which Plaintiffs Horse and Gonzalez endured unlawful rectal searches. The identifying information in question is the officer's name, badge number, and the number or name of the Civil Disturbance Units (CDU) platoon and/or Special Operations Division Domestic Security Operations (DSO) unit to which the MPD member was assigned, if any. The CDU/DSO information is critical to identifying which supervisors were responsible for which conduct. Regarding the first interrogatory (about officers who were present and on duty in the area where one or more Plaintiffs were pepper-sprayed, detained, and denied basic needs in detention), Plaintiffs also ask for an indication as to which officers were issued dispensers of chemical irritants; this information will help narrow down the group of officers who could have pepper-sprayed Plaintiffs.

     Defendants have refused to consent to the first interrogatory. But the first interrogatory is essential to identifying the true names of most of the Doe and Soe Defendants. In addition to alleging that the officers who made the formal arrests and the officers who improperly searched the Plaintiffs are liable, Plaintiffs also assert claims against the officers who participated in and ordered the pepper-spraying and detention of Plaintiffs and the denial of their basic needs while in detention. Although the list sought by the first interrogatory will include many officers, that breadth is necessary because there were many officers on the scene where Plaintiffs' rights were violated; the list is as narrowly tailored as possible to enable Plaintiffs to identify the Defendants they have sued. Denying Plaintiffs access to a list of officers present and on duty where Plaintiffs were pepper-sprayed and detained would substantially obstruct Plaintiffs' ability to learn the true names of the majority of the Defendants they have sued.

Defendants have also refused to consent to providing any officer photographs. However, photographs are a crucial tool in identifying Defendants' true names. Plaintiffs will use the photographs to identify the officers involved by comparing the photographs to their memories of the events. With regard to some John Doe defendants – such as John Doe 150, who conducted the manual rectal searches – it is difficult to imagine how Plaintiffs will learn their true names without recognizing them in photographs. Additionally, Plaintiffs have been working diligently to investigate the facts and have identified witnesses who were present at the same places and subjected to the same treatment as Plaintiffs; these witnesses may be able to identify Defendant officers using the photographs. Officer photographs can also be compared to other photographic evidence Plaintiffs possess (such as photographs taken by Plaintiff Shay Horse) to help identify the officers involved. Finally, officer photographs, in conjunction with badge numbers, can be used to help identify officers in other photographic evidence containing only blurred or partial facial features along with partial badge numbers.[3]

Defendants' proposal to provide access to officer photographs at MPD would present significant logistical and efficiency issues that might require additional intervention of the Court. Two of the plaintiffs currently reside in New York and at least one potential witness resides outside of the District. Plaintiffs and witnesses may need to view the photos multiple times as they attempt to refresh their recollections; they might also remember more if they can view the pictures at the same time as other Plaintiffs and witnesses and converse with each other. Significant time and resources will be required to conduct comparison of officer photographs with other photographic evidence, as well as to use officer photographs in conjunction with partial badge numbers or blurred faces to identify Defendants. By restricting access to MPD,

---

[3] Some examples of such photographs are attached as Exhibit B.

Plaintiffs' attorneys will repeatedly have to bring their own evidence and attorney work product to MPD and draft additional work product there.

Plaintiffs do not believe the disclosure of photographs presents any concerns about privacy, because an officer's face, name tag, and badge number are readily visible to the public at large every day the officer is on duty. Indeed, members of the public are free to photograph officers pursuant to the MPD's own General Orders. *See* General Order 304-19, Video Recording, Photographing, and Audio Recording of Metropolitan Police Department Members by the Public, July 19, 2012 ("The Metropolitan Police Department (MPD) recognizes that members of the general public have a First Amendment right to video record, photograph, and/or audio record MPD members while MPD members are conducting official business or while acting in an official capacity in any public space, unless such recordings interfere with police activity.")

Nevertheless, to ameliorate any concerns the Defendants have on that score, Plaintiffs proposed a simple and commonplace prophylactic: the entry of an appropriate protective order. There is no reason to believe that a protective order would not be fully effective in preventing disclosure of officer photographs beyond this litigation. Nonetheless, even after Plaintiffs offered to agree to a protective order and invited Defendants to propose one, Defendants refused to consent to any interrogatories requiring photographs.

3. The desired information – the identity of the individual Defendants – is likely to be found, because MPD must be in possession of records showing which of its officers were involved in the events at issue and containing the requested identifying information. Additionally, MPD is required to keep records of the officers to whom pepper-spray is issued

and by whom it is used. *See* Doc. 21, Judgment, *Kaddoura v. District of Columbia*, Civ. No. 06-0099 (D.D.C. June 29, 2007) (requiring that such records be kept).

    4. The requested discovery will not unreasonably burden MPD, as all of the relevant information is maintained in the normal course of its business. On the other hand, making Plaintiffs lose their claims because they cannot identify the individuals who violated their rights would impose a great burden on them. The scope of the request is therefore reasonable, and none of it is "on issues going to the merits of [the] case." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014). Moreover, the timely identification of the Doe and Soe officers would allow those defendants to participate in the case from an earlier stage, which will be to the benefit of all parties—including them—and to the Court.

The limited expedited discovery requested in this motion will substantially contribute to moving the case forward by permitting Plaintiffs to amend their complaint in a timely manner to reflect the true names and identities of the officers who mistreated Plaintiffs on January 20. Accordingly, Plaintiffs have demonstrated good cause.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted. A proposed order is filed herewith.

                                              Respectfully submitted,

                                              */s/ Scott Michelman*
                                              Scott Michelman (D.C. Bar No. 1006945)
                                              Arthur B. Spitzer (D.C. Bar No. 235960)
                                              Shana Knizhnik[4]
                                              American Civil Liberties Union
                                                 of the District of Columbia
                                              4301 Connecticut Avenue, N.W., Suite 434
                                              Washington, D.C. 20008
                                              Tel. 202-457-0800
                                              Fax 202-457-0805
                                              smichelman@acludc.org

August 21, 2017                            Counsel for Plaintiffs[5]

---

[4] Admitted in New York. Practicing in D.C. under supervision of a D.C. Bar member while D.C. Bar application pending, pursuant to D.C. Ct. App. R. 49(c)(8).

[5] Counsel acknowledge the assistance of Michael Chapper, a Georgetown Law student, and David Goldenberg, a recent University of Michigan Law School graduate, in the preparation of this motion.