UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAY HORSE, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*<br><br>Defendants. | Civil Action No. 17-1216 (ABJ) |

DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION
TO PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED
EXPEDITED DISCOVERY FOR THE PURPOSE OF IDENTIFYING
"JOHN DOE" DEFENDANTS

INTRODUCTION

During Inauguration Day on January 20, 2017—a day which marks the peaceful transition of power in our representative democracy—over 200 self-described anarchists and anti-fascists gathered at Logan Circle in Northwest Washington, D.C., and walked south, toward the Inaugural Parade route, breaking storefront windows; heaving newspaper stands, trashcans and signs into the street; spray painting and burning vehicles; and attacking civilians and police officers. The District of Columbia Metropolitan Police Department (MPD) was tasked with controlling the violence and arresting the rioters. Now, four of those rioters seek the identities of hundreds of MPD officers who responded to the riot—including police officers who have nothing to do with the claims in this lawsuit.

Specifically, plaintiffs seek leave to obtain names, photographs, and assignments of every MPD officer who was within a 25 square-block area of downtown Washington, D.C., during a 14-hour period on Inauguration Day. Plaintiffs argue that they need this information to amend their Complaint to name the defendants described as "John Does" and "John Soes." *See* Pls.' Mot. at 1 [15]; Interrog. No. 1 [15-1]. Plaintiffs' proposed discovery is unreasonable. It is overbroad, disproportionate, and a response imposes an undue burden on the District. Additionally, there are privacy, safety, and national security concerns associated with the disclosure of some of the information plaintiffs seek. To reasonably accommodate plaintiffs, while safeguarding sensitive information, the District agreed to provide plaintiffs with the names of the officers who arrested and searched them, and offered to make photographs of the officers in the area of the riot available for inspection by plaintiffs and plaintiffs' counsel at MPD headquarters, at their convenience. For the officers plaintiffs recognize and identify as "Doe" defendants, the District will provide the information necessary for plaintiffs to name those officers in their Complaint. This is sufficient to satisfy plaintiffs' discovery needs. Anything more is discovery on the merits and is unwarranted at this stage of the litigation.

## ARGUMENT

I. **This Court Takes a "Reasonableness Approach" to Authorizing Discovery Under Rule 26(d).**

Under Federal Rule of Civil Procedure 26(d), parties may not seek discovery until after a Rule 26(f) conference, except in a proceeding exempt from initial

disclosures, "or when authorized by [the federal] rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). To determine whether to authorize discovery prior to a Rule 26(f) conference, this Court applies a "reasonableness approach." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014). "Under the reasonableness approach, the Court considers the 'reasonableness of the request in light of all of the surrounding circumstances,'" which includes the following factors as guidelines for the Court's discretion:  "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142–43 (D.D.C. 2005) (internal citation omitted)).

## II.   Plaintiffs' Proposed Interrogatory No. 1 is Unreasonable.

Plaintiffs' motion greatly understates the breadth of the information requested by Interrogatory No. 1. The request seeks the identification, assignment, and photograph of every single MPD police officer within a 25 square-block area over a 14-hour period, including locations where none of the allegedly unlawful acts in the Complaint occurred. By definition, plaintiffs' request seeks names and photographs of hundreds of MPD officers who never came in contact with plaintiffs and should never be named as defendants in this action.

Interrogatory No. 1 states:

> Please provide a list, for each MPD member who was present and on duty during the Incident and within its perimeters, of the MPD member's:
> a. name,
> b. photograph,
> c. badge number,
> d. the number or name of the Civil Disturbance Units (CDU) platoon and/or Special Operations Division Domestic Security Operations (DSO) unit to which the MPD member was assigned, if any, and
> e. an indication whether that MPD member was equipped on January 20, 2017 with any device, including but not limited to "stingers" or canisters or dispensers of Oleoresin Capsicum spray, that can be used to dispense any chemical irritant.

Pls.' First Set of Interrog., [15-1]. Notably, the "incident's timeframe" lasts 14 hours, from 10 a.m. to 11:59 p.m. on January 20, 2017, and its "perimeters" include:

- M Street NW between 10th and 15th Streets NW;
- Massachusetts Avenue between 10th and 15th Streets NW;
- L Street NW between 10th and 15th Street NW;
- K Street NW between 10th and 15th Streets NW;
- I Street NW between 10th and 15th Street NW;
- H Street NW between 10th and 15th Streets NW;
- New York Avenue NW between 10th and 15th Street NW;
- 11th Street NW between N and G Streets NW;
- 12th Street NW between N and G Streets NW;
- 13th Street NW between N and G Streets NW;
- 14th Street NW between N and G Streets NW;
- Vermont Avenue NW between N and H Streets NW;
- 15th Street NW between N and G Streets NW;
- Franklin Square; and
- Samuel Gompers Memorial Park.

*Id.* at Definitions ¶ 2.

The District recognizes plaintiffs' interest in identifying the "Doe" and "Soe" officers to pursue allegations against them. For this reason, the District offered to make the photographs sought by Interrogatory No. 1 available for inspection at MPD by plaintiffs and plaintiffs' counsel. *See* Pls.' Mot. at 4–5. But this Court

should deny plaintiffs' motion for leave to serve Interrogatory No. 1, except under the conditions described by the District.

### A. Interrogatory No. 1 is Overbroad and Seeks Information Unrelated to Plaintiffs' Identification of "Doe" and "Soe" MPD Officers.

Although the Complaint is brought by four plaintiffs and contains 16 claims, plaintiffs' claims can be grouped into five categories based on the facts forming the bases for the claims: plaintiffs' arrests (Claims 1, 2, 3 and 9); the alleged use of pepper spray against plaintiffs (Claims 5, 6, 7, and 8); the use of a "kettle" to detain plaintiffs (Claim 4); the conditions of confinement during the kettle (Claims 10, 11, 12, and 13); and the allegedly invasive searches of plaintiffs Horse and Gonzalez (Claims 14, 15, and 16). Plaintiffs contend the breadth of Interrogatory No. 1 is "necessary" to identify the officers alleged to have "participated in and ordered the pepper-spraying and detention of Plaintiffs and the denial of their basic needs while in detention."[1] Pls.' Mot. at 8. Not so.

Unlike the cases that plaintiffs cite in support of the proposition that "this Court routinely grants limited expedited Doe discovery when plaintiffs make a showing of good cause," Pls.' Mot. at 6, plaintiffs are not seeking only the names of individuals who are reasonably likely to be the "Doe" defendants in their Complaint. *Cf. Malibu Media, LLC v. Doe*, 177 F. Supp. 3d 554, 557–78 (D.D.C.

---

[1] Interrogatory Nos. 2 and 3 seek information related to plaintiffs' arrest and search claims; the District consents to plaintiffs' motion for leave to serve these requests, but preserves its objections to their form, language, and scope. In response to Interrogatory Nos. 2 and 3, the District will provide plaintiffs the names of their arresting officers and the officer who conducted searches at the facility where Horse and Gonzalez were processed.

2016) (permitting a third party subpoena on an internet service provider seeking identity of an individual whose IP address already was known); *Warner Bros. Records, Inc. v. Doe*, 527 F. Supp. 2d 1, 3 (D.D.C. 2007) (permitting a third party subpoena on an internet service provider seeking identity of six individuals whose IP addresses already were known); *Hartley v. Officer Wilfert*, 931 F. Supp. 2d 230, 232 (D.D.C. 2013) (permitting discovery to identify a single "Doe" defendant where plaintiff alleged the unnamed defendant, a Secret Service officer, and an identified Secret Service officer, approached her in front of the White House, at a particular time on a particular date). Rather, plaintiffs seek the identity, unit assignments, and photographs of any officer who, during a 14-hour period, was within an area spanning 25 city blocks—including officers who were not in the specific places where plaintiffs allege they were pepper sprayed, kettled, or detained, and thus cannot possibly be the "Doe" defendants to this action.

By failing to appropriately tailor the parameters of their request, plaintiffs unreasonably expand the number of MPD officers whose identities will be responsive, making it *less* likely that plaintiffs will be able to correctly identify the unnamed defendants, and *more* likely that countless individuals will be forced into litigation to which they have no connection whatsoever. Accordingly, plaintiffs' broad request is inconsistent with their purported purpose as well as the authorities on which they rely. Indeed, plaintiffs are attempting—improperly—to use expedited discovery under Rule 26(d)(1) to conduct an inquiry that extends far beyond the limited identification of the "Doe" officers. *See Guttenberg*, 26 F. Supp. 3d. at 98

(request must be "narrowly tailored to reveal information related to the [limited issue] as opposed to the case as a whole"). The "reasonableness" factors of breadth and purpose thus support denial of plaintiffs' motion.

### 1. Interrogatory No. 1 is Overbroad to Identify the "Doe" and "Soe" Officers Described in Plaintiffs' Claims Regarding Pepper Spray.

Interrogatory No. 1 is overbroad to determine the "Doe" officers that plaintiffs allege pepper sprayed them. *See* Compl. ¶¶ 171–83 (Claims 5, 6, 7, and 8). Plaintiffs characterize their request as seeking "a list of officers present and on duty where Plaintiffs were [allegedly] pepper-sprayed and detained." Pls.' Mot. at 8. But this is not what is sought in the Interrogatory. The geographic area and time frame during which plaintiffs claim they were pepper sprayed is much narrower than the parameters of Interrogatory No. 1.

The four plaintiffs provide specific allegations in the Complaint regarding the locations where they were pepper sprayed. *See id.* ¶¶ 23–26, 32–35, 56, 84.

- Ariel alleges that at 1:45 p.m. on January 20, 2017, he was pepper sprayed while standing on the south side of L Street, at 12th Street, N.W. *Id.* ¶ 84.

- Lagesse alleges she was pepper sprayed while "[o]n or near 13th Street, N.W.," *id.* ¶ 35, south of Logan Circle, *id.* ¶ 32, and while detained in a "kettle" at the corner of 12th and L Streets, N.W. *Id.* ¶ 56.

- Horse alleges he was pepper sprayed while walking along 13th Street, N.W., south of Logan Circle *id.* ¶¶ 23–26, 35, and while detained in a "kettle" at the corner of 12th and L Streets, N.W., *id.* ¶ 56.

- Gonzalez alleges he was pepper sprayed while detained in a "kettle" at the corner of 12th and L Streets, N.W. *Id.* ¶ 56.

Meaning, together, the four plaintiffs allege they were pepper sprayed on 13th Street, N.W., before the kettle occurred at 10:45 a.m., *id.* ¶ 53, and at the corner of 12th and L Streets, N.W., once the kettle had formed.

Therefore, the only officers who could be the "Does" described in the claims involving pepper spray (Claims 5, 6, 7, and 8) are those who were either on 13th Street N.W., south of Logan Circle, before 10:45 a.m., or those who were at 12th and L Streets, N.W., during whatever span of time plaintiffs contend they were "kettled." But Interrogatory No. 1 seeks the identity, unit assignments, and photographs of officers within an additional 20 city blocks over a total of 14 hours.

Further, Interrogatory No. 1 will not reasonably aid plaintiffs in identifying the "Soe" officer who ordered the use of pepper spray. Plaintiffs have not alleged that they witnessed an officer give a command authorizing the use of pepper spray. Thus, there is no basis upon which to believe plaintiffs will likely be able to identify the officer based on his or her name, photograph, and unit number.

2. **Interrogatory No. 1 is Overbroad to Identify the "Doe" Officers Described in Plaintiffs' Claims Regarding Kettling.**

Interrogatory No. 1 is also overbroad to determine the "Doe" officers described in plaintiffs' claim regarding kettling (Claim 4). Only two plaintiffs—

8

Horse and Lagesse—allege they were unlawfully kettled. Compl. ¶¶ 168–70. They both describe walking south down 13th Street N.W. from Logan Circle, *id.* ¶¶ 14–17, 32, then turning around to head north up 14th Street to run from the police, *id.* ¶ 39, and finally turning east on L Street until they reached the corner of 12th and L Streets, N.W.—the location where they were allegedly kettled at about 10:45 a.m., *id.* ¶¶ 40–42, 53. To identify the officers who allegedly forced Horse and Lagesse to turn north on 14th Street and east on L Street, plaintiffs should seek only the identities of the officers who were on those few blocks at about 10:45 a.m. For the officers who kettled Horse and Lagesse at 12th and L Streets, N.W., plaintiffs should seek only the identities of officers who were at that intersection after 10:45 a.m. As explained, what plaintiffs seek in Interrogatory No. 1 is far broader.

### 3. Interrogatory No. 1 is Overbroad to Identify the "Doe" Officers Described in Plaintiffs' Claims Regarding the Conditions of Their Confinement.

The breadth of plaintiffs' request is not justified by their contention that the information is necessary to determine the "Doe" officers who allegedly denied them basic needs during the kettle. Three plaintiffs—Horse, Lagesse, and Gonzalez—bring claims (Claims 10, 11, 12, and 13) related to the conditions while they were detained in the kettle at the corner of 12th and L Streets, N.W., before they were transported to be processed. The only officers who could possibly be the "Does" described are those who were at 12th and L Streets, N.W., during the time plaintiffs were kettled. As explained, plaintiffs' request is substantially broader than that.

> **B. Interrogatory No. 1 Unreasonably Seeks the Unit Assignments of Hundreds of MPD Officers on Inauguration Day, Disclosure of Which Threatens National Security.**

Plaintiffs seek the "number or name of the Civil Disturbance Units (CDU) platoons and/or Special Operations Division Domestic Security Operations (DSO) unit to which the MPD member was assigned, if any." Interrog. No. 1. The only justification provided is that the "CDU/DSO information is critical to identifying which supervisors were responsible for which conduct." Pls.' Mot. at 8. But the request is unlikely to reveal the identity of the "Soes" in plaintiffs' claims. First, plaintiffs do not seek the titles of the officers; they seek the names, unit assignments, and photographs of the officers. *See* Interrog. No. 1. As a result, plaintiffs will be unable to discern *which* officers are supervisors.

Even more concerning, however, is that plaintiffs are seeking the unit assignments of every single MPD officer within an active, 25 square block area, on Inauguration Day, under the justification that they need that information to be able to identify the supervisors of a few "Doe" officers. The unit scheme of hundreds of MPD officers is not relevant to plaintiffs' claims. But the disclosure of the squad assignments of several hundred MPD officers assigned to a certain geographic location during Inauguration Day—a day designated by the U.S. Department of Homeland Security as a National Special Security Event—would enable plaintiffs, plaintiffs' counsel, and unnamed "witnesses," *see* Pls.' Mot. at 9, to learn sensitive and confidential law enforcement operation tactics used by MPD during National Special Security Events.

Leading up to presidential inaugurations and other national special security events, federal and local law enforcement offices make strategic and tactical decisions regarding the placement of officers and units for the event. Presidential inaugurations occur every four years; the ongoing confidentiality of law enforcement operations for Inauguration Day is crucial to national security and the security of the public and the President of the United States. The potential consequences of public disclosure of this information are not justified by plaintiffs' purported purpose in seeking the discovery, particularly considering the unlikely possibility that the responsive information will enable plaintiffs to identify the "Soe" defendants described in the Complaint.

There are more narrowly tailored requests plaintiffs could make to gather the identity of the "Soe" officers, without unnecessarily risking national security. For example, plaintiffs could ask for the names of officers who authorized the use of pepper spray or for the names of supervisors of specific officers who they identify as "Does." But Interrogatory No. 1, as written, goes too far. Plaintiffs fail to show good cause for seeking this expansive and sensitive information.

C. <u>Interrogatory No. 1 Is Burdensome Because It Seeks Information That Threatens MPD Officer Privacy and Safety.</u>

As explained above in Section II.A, the factual bases for plaintiffs' claims are geographically limited. As a result, Interrogatory No. 1 seeks personal identifying information and photographs of individual MPD officers who should never be defendants in this lawsuit. *Cf. Warner Bros. Records, Inc. v. Doe*, 527 F. Supp. 2d 1, 3 (D.D.C. 2007) (limiting the subpoena to information sufficient to identify the

11

unnamed defendants). Despite being government employees and public-facing actors, MPD officers have a right to privacy. *See, e.g., D.C. v. Fraternal Order of Police, Metro. Police Dep't Labor Comm.*, 75 A.3d 259 (D.C. 2013) (finding that the D.C. Freedom of Information Act's personal privacy exemption protected names of MPD employees from disclosure); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 189, 192 (2d Cir. 2012) (finding that government employees in sensitive occupations—including "police"—have a privacy interest in keeping their names from disclosure). And because the majority of the officers for whom plaintiffs seek names and photographs should never be defendants in this action, plaintiffs cannot demonstrate an interest in disclosure that outweighs the officer's right to privacy. *See Braslavsky v. F.B.I.*, No. 92 C 3027, 1994 WL 247078, at \*3 (N.D. Ill. June 3, 1994), *aff'd,* 57 F.3d 1073 (7th Cir. 1995) (weighing the interest in disclosure against the privacy interests of low-level FBI employees, and finding disclosure of the FBI employees' identities unwarranted).

The invasion of privacy of MPD officers who have nothing to do with plaintiffs' allegations is even more concerning here, where the identification of the officers may also pose a risk to their safety. Three of the four plaintiffs were arrested within a group of over 200 self-identified anarchists who broke storefront windows, set a limousine on fire, and threw bricks at MPD officers responding to the scene. These individuals are decidedly anti-police and anti-law enforcement. One of the plaintiffs to this action, Milo Gonzalez, recently used a photograph

12

containing the words "fuk u kkkops" as his public Facebook profile picture.[2] Among the hashtags used most frequently alongside those associated with the Inauguration Day riot is #ACAB, shorthand for "all coppers are bastards." And online, anarchists have networks dedicated to broadcasting the personal information of individuals they view as their opposition, including the U.S. Department of Justice attorneys prosecuting the rioters and MPD Police Chief Peter Newsham. *See, e.g.,* https://www.resistanceresearch.org/police/peter-newsham/ (listing Chief Newsham's alleged home address, vacation addresses, and girlfriend's name).[3] It is certainly foreseeable that if the rioters or other members of their anarchist network have the names and photographs of hundreds of MPD officers, they may use the information to target the officers or distribute the information to others who may wish to do harm to police.

Plaintiffs' counsel's proposed solution of entering into a protective order is inadequate to address these concerns. Plaintiffs concede they intend to show the photographs to individuals who are not parties to this litigation but may have been witnesses. *See* Pls.' Mot. at 9 ("these witnesses may be able to identify Defendant officers using the photographs"). Presumably, these unnamed witnesses are other individuals who participated in the riot. As a result, the identity, unit assignments,

---

[2] https://www.facebook.com/photo.php?fbid=10209379951154995&set=a.13789 39872 786.49243.1210570025&type=3&theater (attached as Ex. 1).

[3] As reported as recently as this week, first responders, such as police officers, are routinely targets of cyber terrorism, including by actors who distribute personal identifying information online in order to solicit attacks by anti-government sympathizers. *See* http://wtop.com/national-security/2017/09/cyber-terrorists-targeting-first-responders/ (last visited, Sept. 7, 2017).

and photographs of hundreds of officers will be shown to an unknown number of unidentified anarchists and rioters. Plaintiffs' counsel cannot assure that this information will be protected in the manner necessary to ensure the privacy and safety of the officers.

III. Officer Photographs are Unnecessary for the Identification of the "Doe" and "Soe" Officers Sought by Interrogatory Nos. 2 and 3.

The District consents to plaintiffs' request to serve two of plaintiffs' three proposed interrogatories, numbers 2 and 3, except to the extent they seek photographs of the officers. Plaintiffs argue that "[w]ith regard to some John Doe defendants—such as John Doe 150, who conducted the manual [alleged] rectal searches—it is difficult to imagine how Plaintiffs will learn their true names without recognizing them in photographs." Pls.' Mot. at 9. This argument is without merit.

In response to Interrogatory No. 2, the District has agreed to provide plaintiffs with the names of their arresting officers, and the supervisor who authorized the arrests. There is absolutely no need for plaintiffs to have photographs of these officers in order to name them in their amended complaint. The District similarly agreed to provide plaintiffs with the name of the officer who conducted searches at the facility where Horse and Gonzalez were processed—"John Doe 150." Based on the District's responses to Interrogatory Nos. 2 and 3, plaintiffs will have the identity of the officers described in the complaint as "Does" and "Soes" for all plaintiffs' arrest- and search-related claims.

IV. **Although Plaintiffs' Proposed Interrogatories Are Unreasonable, The District is Willing to Make The Requested Photographs Available For Inspection by Plaintiffs and Plaintiffs' Counsel.**

The District has offered to collect and make available for inspection at MPD, the photographs of every officer whose identity is responsive to Interrogatory No. 1. If plaintiffs recognize the officers who they describe in their Complaint, as plaintiffs suggest they believe they will be able to do, Pls.' Mot. at 9 ("Plaintiffs will use the photographs to identify the officers involved by comparing the photographs to their memories of the events"), the District will provide plaintiffs' counsel with the identifying information necessary for plaintiffs to name those officers in an amended complaint.

Making documents available for inspection is specifically contemplated by the Federal Rules of Civil Procedure as an adequate process for producing relevant material. *See* Fed. R. Civ. P. 34(b)(2)(B). Additionally, there is precedent in civil actions for permitting plaintiffs an opportunity to identify unnamed defendants based on a controlled photograph array, rather than the production of photographs. *See Davis v. City of Chicago*, 219 F.R.D. 593, 598–600 (N.D. Ill. 2004) (ordering a photograph array to give plaintiff an opportunity to identify the unknown defendants, on the conditions that the array be conducted under the supervision of an independent, neutral person trained in the proper methods of eyewitness identification, and that fillers be included to ensure officers with the same general characteristics were in the array); *Corbett v. City of New York*, No. 11-cv-3549, 2013 U.S. Dist. LEXIS 137824 (E.D.N.Y. Feb. 15, 2013) (permitting plaintiff to inspect a

photo array containing fifty-four photographs of all the plainclothes officers within the precinct and on duty at the time of the alleged incident, together with fillers); *Wright v. Davis*, No. C-10-375, 2011 U.S. Dist. LEXIS 97397 (S.D. Tex. Aug. 30, 2011) (permitting plaintiff to view a photograph of each of the officers who worked the intake unit where the events concerning plaintiff's allegations were alleged to have occurred and providing him an opportunity to attempt to identify the unknown defendant based on the photographs); *Brown v. County of Cook*, No. 9 C 6319, 2011 U.S. Dist. LEXIS 11552, at *4 (N.D. Ill. Feb. 7, 2011) (ordering photograph array for identification, with fillers, to take place at plaintiff's attorney's office, but with defendant's attorney present for the identification).

    Finally, given the overbreadth of plaintiffs' request and the legitimate safety concerns associated with the disclosure plaintiffs seek, the District's offer represents an eminently reasonable solution. Plaintiffs' only arguments against the District's proposal relate to their personal convenience. They argue, first, that viewing the photographs at MPD in the District will be inconvenient for the out-of-town plaintiffs and witnesses. But plaintiffs traveled to the District of Columbia for Inauguration Day, were arrested for rioting in the District, and then brought this lawsuit against the District, in federal court in the District. The fact that plaintiffs will suffer the inconvenience of travel to the District if they have to view the photographs at MPD does not make plaintiffs' request for hundreds of MPD officer photographs more reasonable. Additionally, plaintiffs' counsel suggested a protective order under which they would maintain the materials at their office in

16

the District, Pls.' Mot. at 5, which means plaintiffs and the witnesses would still have to travel to the District to view the photographs. Plaintiffs' other convenience argument is that they need to view the photographs in comparison to other photographic evidence in their possession, which will be time consuming and may require repeat visits. But the District offered to accommodate plaintiffs by permitting them to take as much time as they wish to view the photographs at MPD, and to do so at their own convenience.

Plaintiffs fail to provide a reasonable basis upon which this Court should grant them leave to seek hundreds of identities and photographs of MPD officers, including many that are irrelevant to their claims, when the District already has offered to work with plaintiffs by providing them with photographs of all the officers in the area, for viewing at MPD.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery for the Purpose of Identifying "John Doe" Defendants, with respect to Interrogatory No. 1 and plaintiffs' requests for photographs in Interrogatory Nos. 2 and 3.

Dated: September 8, 2017.   Respectfully submitted,

        KARL A. RACINE
        Attorney General for the District of Columbia

        ELIZABETH SARAH GERE
        Deputy Attorney General
        Public Interest Division

*/s/ Toni Michelle Jackson*
TONI MICHELLE JACKSON [453765]
Chief, Equity Section

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
AMANDA J. MONTEE [1018326]
ERIC U. JOHNSON [1030661]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 442-9774
(202) 730-0586 (fax)
matthew.blecher@dc.gov

*Attorneys for defendants District of Columbia and Peter Newsham*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHAY HORSE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>Defendants. | Civil Action No. 17-1216 (ABJ) |

### ORDER

Upon consideration of Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery for the Purpose Of Identifying "John Doe" Defendants [15], defendant District of Columbia's opposition, and the entire record, it is this _____ day of _____, 2017,

ORDERED, that Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery for the Purpose Of Identifying "John Doe" Defendants is DENIED, with respect to Interrogatory No. 1 and plaintiffs' requests for photographs in Interrogatory Nos. 2 and 3.

Dated: _____          _____
                             THE HONORABLE AMY BERMAN JACKSON
                             Judge, United States District Court
                             for the District of Columbia