UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHAY HORSE, *et al.*,

Plaintiffs,

v.

DISTRICT OF COLUMBIA, *et al.*,

Defendants.

No. 1:17-cv-01216 (ABJ)

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT LIMITED
EXPEDITED DISCOVERY FOR THE PURPOSE OF IDENTIFYING "JOHN DOE"
DEFENDANTS**

Plaintiffs appreciate Defendants' willingness to narrow the scope of the dispute regarding

discovery. Defendants' brief filed September 8 opposing Plaintiffs' motion (ECF 18) provides a

number of suggestions and concessions that Plaintiffs can accept in order to facilitate agreement

and expedite the sharing of needed information. Specifically (and as discussed in further detail

below), Plaintiffs are prepared to accept Defendants' proposals regarding Plaintiffs'

interrogatories number 2 and 3. Regarding interrogatory number 1, now that Plaintiffs have

learned from Defendants' briefing and in follow-up communications with opposing counsel that

Defendants have the ability to identify officers at specific locations during the events in question,

Plaintiffs accept Defendants' suggestion to narrow the geographic and temporal scope of their

requests.

However, Plaintiffs cannot agree with Defendants' position regarding officer

photographs. First, Defendants' portrayal of the danger to officers is grounded in unwarranted

characterizations of the Plaintiffs and potential witnesses, and unwarranted assumptions about

1

whether Plaintiffs (or, indeed, any individuals who express political opinions hostile to police officers) are likely to pose a threat to officers.

Second, Defendants' privacy concerns are overstated. Requiring the disclosure of officer photographs is an accepted method for facilitating the identification of Doe defendants. MPD officers' faces and nametags can regularly be viewed and photographed as they perform their duties. And MPD officers' and the Department's own conduct in posting officer names and pictures online belies any claim that the release of officer names and photographs poses a serious threat.

Third, Defendants have not explained why an appropriate protective order cannot accommodate whatever officer privacy concerns exist.

Finally, Defendants' proposed alternative – making photographs available at MPD – is unsatisfactory. It does not adequately address Plaintiffs' need to conduct a full investigation in the four months they have remaining to name the Doe defendants, because Defendants refuse to permit access to the photographs by witnesses who could help Plaintiffs identify the appropriate Doe defendants. Access by witnesses is vital because witnesses who were in the same place as Plaintiffs at the same time and subjected to the same conduct might have seen and be able to recall faces that Plaintiffs were unable to see or that Plaintiffs cannot remember. Additionally, to give Plaintiffs a fair opportunity to identify the appropriate defendants by cross-referencing evidence already known to their attorneys or other Plaintiffs, any arrangement for the viewing of photographs at MPD would need to ensure the ability of Plaintiffs to confer privately with their counsel while viewing the photographs and of counsel to bring to the viewing additional photographic and video evidence that would not be subject to search by MPD.

Defendants' viewing proposal is not merely less convenient for Plaintiffs and their counsel; it also sets up the possibility of further conflict over the conditions of the viewings – conflict that might unfortunately prompt the parties to seek further rulings from this Court. Far preferable to taking up the Court's time with logistical disputes would be for this Court to grant Plaintiffs' motion requiring the release of the photographs and to issue an appropriate protective order restricting use of the materials for the purposes of the litigation only and prohibiting anyone other than Plaintiffs' counsel from possessing (as opposed to merely viewing) the photographs.

Plaintiffs discuss each of these points in greater detail below. Plaintiffs also attach as Exhibit A a revised set of interrogatories that accounts for as many of the Defendants' concerns as they reasonably can. For Defendants' and the Court's convenience, Plaintiffs attach as Exhibit B a redlined version tracking the changes from Plaintiffs' original proposed interrogatories.

## ARGUMENT

### I.     Plaintiffs Agree To Defendants' Proposals Regarding Interrogatories 2 and 3.

Now that Defendants have made clear that they are able and willing to name the specific individuals whose identities Plaintiffs are seeking via proposed interrogatories 2 and 3, Plaintiffs agree that they no longer need photographs of those individuals. Plaintiffs' revised proposed interrogatories, attached as Exhibit A, reflects Plaintiffs' agreement to Defendants' suggestions.

### II.    Plaintiffs Agree To Narrow The Geographic And Temporal Scope of Interrogatory 1.

Plaintiffs appreciate Defendants' suggested revisions to address what Defendants view as the overbreadth of Plaintiffs' requests. The scope of Plaintiffs' requests reflected their expectation that Defendants might not have the ability to identify the specific officers on duty at particular locations at particular times. However, in light of Defendants' suggestion that they

have a greater capacity than Plaintiffs understood to pinpoint which officers were where at which times, Plaintiffs find Defendants' recommendations about narrowing their requests, ECF 18, at 8-9, 11, to be persuasive. In light of Defendants' security objections and Defendants' apparent ability to identify supervisors, Plaintiffs are willing to drop the request for CDO/DSO units. Plaintiffs' revised proposed interrogatories, attached as Exhibit A, narrows the scope of interrogatory 1 to focus on the specific times and locations at which the violations of Plaintiffs' rights occurred (with the exception of the rectal search claims, which are addressed by interrogatory 3). Of course, not all locations and times can be stated with pinpoint precision, and some of Plaintiffs' claims, such as the blocking of safe dispersal routes, implicate more than one location. Plaintiffs have done their best to narrow the scope of their request to the locations and times described in their complaint. *Compare* ECF 5-1, ¶¶ 20-36; 39-48; 53-75; 78-91; 94-112 (complaint), *with* Exhibit A (proposed interrogatories), Definition 2.

### III.   Defendants' Remaining Objections To The Disclosure Of Photographs Under A Protective Order, And Their Alternative Proposal, Are Not Well Taken.

Having narrowed their requests and compromised as much as possible, Plaintiffs now turn to the parties' remaining disagreement: the provision of photographs in response to interrogatory 1. Defendants do not dispute most of Plaintiffs' arguments for good cause – that Defendants possess the requested information; that Plaintiffs will begin to lose their claims if the appropriate defendants are not named by January 20, 2018, and the critical role of the photographs in identifying Doe and Soe defendants whose names and badge numbers Plaintiffs were unable to ascertain as they were being subjected to chemical irritants, chased along the streets of the District, and packed together with other detainees. Indeed, the District "recognizes plaintiffs' interest in identifying the 'Doe' and 'Soe' officers to pursue allegations against them." ECF 18, at 4. Defendants contend that interrogatory 1 is not carefully tailored, but as noted in the

previous section, Plaintiffs have now modified the scope of their request based on Defendants' objections.

The heart of Defendants' opposition to the provision of photographs is their concern for officer safety, which is founded on a chain of speculation beginning with the alleged untrustworthy nature of the Plaintiffs themselves. See ECF 18, at 1, 12 (referring to Plaintiffs as "rioters" and further associating them with violent acts by characterizing three of them as part of "a group of over 200 self-identified anarchists who broke storefront windows, set a limousine on fire, and threw bricks at MPD officers").[1] Defendants take a similarly dark view of Plaintiffs' potential witnesses. *See id.* at 13 ("Presumably, these unnamed witnesses are other individuals who participated in the riot."). Extrapolating from these inapt characterizations along with one photograph posted on social media, Defendants speculate that exposing photographs of officers to Plaintiffs or their potential witnesses – even when the photographs cannot be distributed and are under an appropriate protective order – places officers at risk. Respectfully, Defendants' chain of speculation is unjustified.

First, Defendants exaggerate the degree of Plaintiffs' culpability in whatever unlawful activity occurred on January 20. Defendants' refer to the Plaintiffs as "rioters." In fact, only two of the Plaintiffs (Mr. Gonzalez and Ms. Lagesse) are charged with crimes in connection with the events of January 20. They are, of course, innocent until proven guilty. The other two Plaintiffs

---

[1] Undersigned counsel take very seriously the Court's admonition to avoid casting aspersions on opposing counsel – something they certainly did not intend to do, and do not feel was done to them. Here and in all their papers, Plaintiffs' counsel take issue only with the validity of Defendants' legal arguments and factual characterizations, not the integrity or ability of opposing counsel, who have been entirely professional and cooperative in the conduct of this case. Plaintiffs' counsel do not seek to cast aspersions on opposing counsel when they argue that Defendants' opposition brief is unpersuasive to the extent it relies on casting aspersions on Plaintiffs themselves.

(Mr. Horse and Mr. Ariel) are charged with no crime in connection with the events of January 20; Mr. Ariel was not even arrested that day. Defendants also refer to three of the Plaintiffs as part of a "group" that committed certain acts (breaking windows, setting fires, throwing bricks at officers) even though the question of whether all demonstrators in the vicinity of Franklin Square on the morning of January 20 were part of such a "group" is hotly contested in both this lawsuit and the criminal prosecutions. Defendants' speculation about the witnesses – whose identities Defendants do not even know – is likewise unjustified.

Beyond Defendants' unwarranted characterization of Plaintiffs as "rioters," Defendants' speculation that granting Plaintiffs' motion would represent a threat to MPD officers relies on the further implicit assumption that Plaintiffs are disposed to commit acts of harassment or violence against officers. Regarding Plaintiffs Horse, Lagesse, and Ariel, Defendants offer no support for this assumption other than their characterization of Plaintiffs as "rioters." Regarding Plaintiff Gonzalez, Defendants point to a picture from the internet in which Mr. Gonzalez expresses his negative attitude toward the police – without, notably, threatening anyone. At the heart of Defendants' position is a presumption that anyone who expresses a political view in opposition to the police (or, more narrowly, someone who does so in crude terms, *but cf. Cohen v. California*, 403 U.S. 15, 25 (1971) (explaining that "the Constitution leaves matters of taste and style … largely to the individual")) presents a danger of harassment or violence directed to individual officers. That generalization finds no support in logic or law. One is not required to endorse or approve of Mr. Gonzalez's sentiments to understand why a person who was detained for many hours in cold weather while being deprived of food, water, and toilets, and then subjected to an unjustified and humiliating manual body cavity search, might express strong

negative views about the police. *Cf. Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969) (per curiam) (distinguishing between "mere advocacy" and "incitement to imminent lawless action").

Accordingly, Defendants have offered no sound basis to fear that either Plaintiffs or the witnesses who might view the photographs would use their viewings to harass or threaten any officers. Nonetheless, as part of the protective order that Plaintiffs have suggested, Plaintiffs would be willing to have any person who views any officer photograph produced as part of discovery sign an agreement not to use the information outside of this case.

Second, Defendants are incorrect that the discovery Plaintiffs seek would undermine officer privacy. As Plaintiffs have explained, *see* ECF 15, at 10, non-undercover officers' identities are already public, in that officers' faces, badges, and nametags are in full view of many members of the public every day, on the street or in the stationhouse. *See Franks v. City of New York*, No. 13-CV-623 JBW VMS, 2013 WL 6002946, at *2 (E.D.N.Y. Nov. 12, 2013) ("Defendant offers no explanation for why the requested photographs are protected by the law enforcement and official information privileges, when the officers are publicly visible during the course of their duties."). And other courts have ordered the disclosure of officer photographs to help identify Doe defendants. *See, e.g., Murphy v. West*, 533 F. Supp. 2d 312, 314, 317 (W.D.N.Y. 2008) (ordering production of photographs of officers for the purpose of identifying Doe defendants after defense counsel refused to provide them based on "security concerns"); *Lozano v. City of New York*, 88 Civ. 0659, 1992 WL 116433, at *2 (S.D.N.Y. Apr.17, 1992) ("It is important for the plaintiffs to avoid unnecessary litigation by determining early in the process which individual police officers are subject to the claims raised. … The photographs are obviously an important element in this process.").

MPD's fears about officer privacy are in fact belied by the online practices of MPD officers and of MPD itself. Some MPD officers display their faces and names to the public on social media pages and make clear their affiliation with MPD, as a quick internet search reveals. *See* Exhibit C (providing twelve examples of LinkedIn and/or Facebook pages in which MPD officers' photographs are displayed together with their names). And MPD has posted on the internet award-ceremony brochures that include pictures and names of honored officers. *See* Exhibit D (brochures from 2014, 2015, and 2016).[2] In light of these practices, Defendants' privacy concerns are not persuasive.[3]

Defendants' authorities, ECF 18, at 12, do not support their claim that the Defendants possess a freestanding right to privacy that can defeat targeted discovery requests for documents needed in litigation. Instead, the cases on which Defendants rely concern either the D.C. or federal Freedom of Information Act, both of which enable access to information not for litigants who have made a showing of good cause but for any member of the public at large upon demand. Defendants' authorities are distinguishable on more specific grounds as well. The decision in *Fraternal Order of Police* applied the privacy exemption of the D.C. FOIA to emails sent as part of an internal complaint process where the officers in question "relied on the government's pledge of confidentiality" as part of the process. *District of Columbia v. Fraternal*

---

[2] For the URLs of the awards ceremony pamphlets in order of appearance in Exhibit D, see https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/14th%20Annual%20Awards%20Program_FIN.pdf; https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/2014%20MPD%20Annual%20Awards%20Program.pdf; and https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/2016%20Annual%20Awards%20Program_FIN.pdf.

[3] Plaintiffs do not seek the home addresses of MPD officers, which Plaintiffs recognize *is* information that might expose officers to harassment – for the same reasons that Plaintiffs moved to have their own home addresses redacted from the public complaint in this case.

*Order of Police*, 75 A.3d 259, 267 (D.C. 2013); *see also id.* at 266 (concluding that "MPD employees *who expressed their personal concerns to the Chief of Police* through [an email account set up for that purpose] have a greater than de minimis privacy interest in keeping their identities from being disclosed" (emphasis added)). Both *Long* and *Braslavsky* were federal FOIA cases in which the court's application of a privacy exemption for officer information was the result of a balancing of interests where the public interest in disclosure was "minimal." *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 194 (2d Cir. 2012); *Braslavsky v. F.B.I.*, No. 92 C 3027, 1994 WL 247078, at *3 (N.D. Ill. June 3, 1994). Moreover, in *Long*, law enforcement officers were merely one group within a set of twenty-four "sensitive" categories of federal employees across the country, including intelligence officers and nuclear scientists, that were at issue, *id.* at 189 n.4; accordingly, *Long* contained no specific analysis of police and certainly not police who are visible to members of their community on a daily basis.

Third, Defendants have not rebutted Plaintiffs' suggestion that an appropriate protective order can alleviate whatever privacy interests exist. Defendants have not expressed any concern that materials stored in the offices of undersigned counsel would be accidentally disseminated, nor articulated any other objections to Plaintiffs' proposal other than their generalized suspicion of the Plaintiffs (addressed above). In short, Defendants have not demonstrated that any officer-privacy concerns warrant denying Plaintiffs the information they need to learn the identities of the proper defendants – particularly where a protective order is available. It bears repeating that if Plaintiffs cannot discover the identities of the relevant officers by January 20, 2018, several of their claims will be irrevocably lost. Defendants' officer privacy concerns are speculative; Plaintiffs' impending loss of claims absent the identification of Doe defendants is certain.

Finally, Defendants' alternative proposal that Plaintiffs – but not potential witnesses – be invited to view photographs at MPD is insufficient. The omission of witnesses from the process is a significant limitation. Although Plaintiffs can recall some of the faces of the officers they encountered, they will probably have difficulty recalling all of them from moments when, for instance, they were facing pepper spray and other distracting and painful crowd-control devices. Plaintiffs' counsel have identified other individuals who were exposed to the same conduct as Plaintiffs at the same time and place. As potential witnesses to the conduct that is the subject of the suit, these individuals might remember additional faces – for instance, if one of the Plaintiffs was shielding her face while one of the witnesses had not yet been sprayed, or countless other possible scenarios that might permit recognition of the relevant officers by witnesses but not Plaintiffs. Consulting witnesses to events that are the subject of a lawsuit is a crucial method of investigating the facts of any case. Defendants provide no reason that Plaintiffs should not be able to avail themselves of additional individuals' memories in trying to identify the proper defendants before they begin to lose claims to the statute of limitations.

Several other conditions would be necessary to provide Plaintiffs a fair opportunity to identify the appropriate defendants. Ordinarily, when reviewing evidence, Plaintiffs would have the opportunity to speak with their lawyers and to synthesize different pieces of evidences their lawyers have compiled. Therefore, any arrangement for the viewing of photographs at MPD would need to ensure the ability of Plaintiffs to confer privately with their counsel while viewing the photographs and of counsel to bring to the viewing additional photographic and video evidence that would not be subject to search.[4] Even if these conditions were met, the inability of

_____

[4] Defendants' opposition brief does not indicate that these additional conditions would be met. Undersigned counsel corresponded with opposing counsel after the filing of Defendants' opposition in an effort to narrow the parties' dispute, and opposing counsel represented that

potential witnesses to view the photographs renders Defendants' proposal inadequate to address Plaintiffs' investigative needs, particularly in light of the existence of a reasonable alternative – disclosure with a protective order.

The fact that photo arrays were used in a few prior cases, *see* ECF 18, at 15-16, adds little to Defendants' argument. None of the cases Defendants cite rejected the production of photographs in favor of a photo array; instead, the cases either adjudicated disputes among the parties about the specific procedures to be used in employing a photo array where both sides were contemplating some type of array procedure, or simply mentioned prior use of a photo array in the procedural history without opining on the procedure's desirability or preferability to any other discovery method.

Defendants' proposal would also impose significant logistical burdens on Plaintiffs and potentially burden the Court. The necessity of coordinating multiple visits at which the photographs, an MPD official to provide the photographs, Plaintiffs' counsel, and Plaintiffs (some of whom would have to travel) would require far more time and effort than Plaintiffs' counsel's coordination of their own clients or witnesses at their own office or via video conference. More significantly, any disagreements over the duration, number, and conditions of Plaintiffs' visits to MPD to view officer photographs could lead to time-consuming and distracting motions practice that would require rulings from this Court. The more efficient solution is to grant Plaintiffs' motion along with an appropriate protective order.

---

Defendants would be willing to ensure Plaintiffs' ability to speak confidentially with their lawyers during the viewings and Plaintiffs' counsel's ability to bring additional photographic and video evidence with them to the viewing. However, defense counsel indicated that Defendants would *not* permit witnesses to view any photographs. Defense counsel did not affirmatively indicate that Plaintiffs' counsel could bring work product to MPD without being searched.

In sum, Plaintiffs' need to identify the appropriate defendants provides good cause for expedited discovery. Plaintiffs' requests are appropriately tailored. Defendants' arguments for rejecting the provision of photographs are unpersuasive, and their suggested alternative is insufficient.

Accordingly, Plaintiffs' motion should be granted and the Court should order Defendants to respond to Plaintiffs' revised interrogatories, attached as Exhibit A.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be granted.

Respectfully submitted,

*/s/ Scott Michelman*
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Shana Knizhnik (D.C. Bar No. 1020840)
American Civil Liberties Union
   of the District of Columbia
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
Tel. 202-457-0800
Fax 202-457-0805
smichelman@acludc.org

September 13, 2017                    Counsel for Plaintiffs[5]

---

[5] Counsel acknowledge the assistance of David Goldenberg, a recent University of Michigan Law School graduate, in the preparation of this motion.

12