## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORSE, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | Civil Action No. 17-1216 (ABJ) |

## OFFICER JOHN DOE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant Officer John Doe respectfully moves this Court under Fed. R. Civ. P. 12(b)(6) to dismiss Claim 16 of plaintiffs' First Amended Complaint, or in the alternative, moves for summary judgment on Claim 16 under Fed. R. Civ. P. 56 on the following grounds:

1. Shay Horse's and Milo Gonzalez's search allegations in their First Amended Complaint [29] contradict those in their initial Complaint [1], and should be stricken; and

2. Plaintiffs' allegations are disproved by the evidence.

These grounds are discussed in greater detail in the accompanying memorandum of points and authorities. A proposed order is attached.

Dated: March 30, 2018.      Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Chief, Equity Section

*/s/ Amanda J. Montee*
AMANDA J. MONTEE [1018326]
MATTHEW R. BLECHER [1012957]
ERIC U. JOHNSON [1030661]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORSE, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>          Defendants. | Civil Action No. 17-1216 (ABJ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OFFICER JOHN DOE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

On June 21, 2017, six months after their arrests for rioting, plaintiffs Shay Horse and Milo Gonzalez publicly claimed in their Complaint, press releases, and statements to the media, that on Inauguration Day an officer of the District of Columbia Metropolitan Police Department (MPD) lined them up against a wall with other arrestees, ordered them to pull down their pants, and subjected them to body cavity exams, inserting his finger into their rectums—one after the other—without changing gloves. Plaintiffs claimed that all of this happened while five-to-ten other male and female MPD officers looked on, laughing.

The graphic details of plaintiffs' post-arrest searches are objectively false. Plaintiffs apparently did not anticipate that their searches would be captured on surveillance video, which clearly shows that the searches described in the original complaint, and depicted above, *did not happen*. To the contrary, plaintiffs

underwent standard clothed pat-down searches along with other arrestees. Their pants were not pulled down, their rectums were not penetrated with dirty gloves, and no MPD officers stood around laughing.

Plaintiffs' account of their searches, broadcast in public statements and subsequent pleadings filed with this Court, were not mere embellishments—they were outright and intentional misrepresentations. Claim 16 of plaintiffs' First Amended Complaint should be dismissed, or in the alternative, the Court should grant Officer John Doe judgment for the reasons below.

## BACKGROUND

### I.   Procedural History

Plaintiffs filed their initial Complaint [1] on June 21, 2017. In it, Horse and Gonzalez alleged that while at the MPD Police Academy on Blue Plains Drive:

> 115. Defendant Officer John Doe 150, who was wearing rubber gloves, ordered Mr. Horse, Mr. Gonzalez, and three other detainees to remove their pants.

> 116. Without warning, Defendant Officer John Doe 150 grabbed Mr. Horse's testicles and yanked on them.

> 117. He then put his finger into Mr. Horse's rectum, through his underwear.

> 118. As Defendant Officer John Doe 150 pushed his finger into Mr. Horse's rectum, he ordered Mr. Horse not to flinch.

> 119. Defendant Officer John Doe 150 pushed his finger an inch deep into Mr. Horse's rectum and wiggled it around for several seconds.

> 120. Defendant Officer John Doe 150 then reached inside Mr. Gonzalez's underwear and fondled his testicles.

121.   Defendant Officer John Doe 150 reach inside Mr. Gonzalez's underwear and put his finger into Mr. Gonzalez's rectum.

…

124. Defendant Officer John Doe 150 then moved down the line and subjected the other three detainees there to similar treatment; Mr. Horse heard another detainee yelp.

Compl. ¶¶ 115–21, 124. Horse and Gonzalez initially brought three claims related to these allegations:  unlawful search in violation of the Fourth Amendment (Claim 14); assault and battery (Claim 15); and intentional infliction of emotional distress (Claim 16).

Due to the gravity of these allegations, on August 7, 2017, the MPD Internal Affairs Division, Sexual Assault Unit (SAU) was assigned to investigate plaintiffs' narrative. On September 7, 2017, as part of the investigation, SAU interviewed Horse and Gonzalez, separately, in the presence of plaintiffs' counsel. The interviews were audio recorded. During the interviews, Horse and Gonzalez told stories that were consistent with the allegations in the Complaint, but both provided additional details and descriptions of the alleged searches beyond the allegations included in the pleading. Plaintiff Horse told SAU:

> [T]he officers had us line up and they started doing more invasive searches. They brought us in like groups of like five from each side of like the van. Um, but yeah, they told us to line up against the wall and assume the position.

Horse, Interview Audio (Sept. 7, 2017) at 5:22–5:37 (Ex. A). Plaintiff Horse's dialogue with the investigator continued:

> Horse: He said assume the position. Those were his exact words.
> Investigator: Tell me what you understood that to mean.
> Horse: I assumed that means hands against the wall.

3

> Investigator: Is that what you did?
> Horse: Yes.
> Investigator: Are you facing the wall or facing away from the wall?
> Horse: Facing the wall.

*Id.* at 16:05–16:25. Horse then told the investigators that when he was facing the wall, he was at the end of a line of five or six arrestees, who were in the same position. *Id.* at 16:30–17:40. According to Horse, the searching officer—John Doe 150—next told the arrestees to "drop em," and Horse unbuttoned his pants and they fell down "somewhere past [his] knees." 19:17–19:52. Horse stated the officer began to search him by patting down his arms and moving down his body. *Id.* at 17:47–18:05. He said the officer then inserted two fingers into his rectum "for several seconds," through his underwear, while his pants were down. *Id.* at 21:00–22:20. Horse told SAU investigators that after the officer searched him and moved down the line to search the other arrestees, Horse "pulled [his] pants up" and continued facing the wall waiting for the other searches to be over. *Id.* at 23:25–23:48.

Plaintiff Gonzalez also described being ordered to pull down his pants and dropping them to his knees for his search:

> Investigator: So when you dropped your pants, how far did you drop them?
> Gonzalez: He told me to my knees.
> Investigator: So, and did you drop them to your knees?
> Gonzalez: Yes.

Gonzalez, Interview Audio (Sept. 7, 2017) at 21:20–21:28 (Ex. B). Gonzalez told the SAU investigator the Officer "fondled [him] and put his finger in [his] bum." *Id.* at 7:50–7:52.

4

As part of their investigation, SAU obtained and reviewed surveillance video footage from the tactical village at the MPD Police Academy on Blue Plains Drive (Blue Plains video). The Blue Plains video captures the arrestee processing and searches that occurred at the MPD Police Academy on January 20, 2017, and during the morning hours of January 21, 2017. The location in the video matches the "mock street" where Horse and Gonzalez allege the unlawful searches occurred. Compl. ¶¶ 113–14.[1] SAU reviewed the footage, which captured the entire time Horse and Gonzalez were at Blue Plains, including their searches. SAU discovered the Blue Plains video directly contradicts the accounts of Horse and Gonzalez in their initial Complaint and SAU interviews.

On October 6, 2017, counsel for the District wrote to counsel for plaintiffs, informing plaintiffs of the Blue Plains video's existence and that the video footage contradicts the allegations in the Complaint and SAU interviews. Letter from Amanda Montee, Assistant Attorney General, to Scott Michelman, ACLU (Oct. 6, 2017) (Ex. C). In the correspondence, the District offered to make the video available for plaintiffs to view, subject to a protective order. *Id.* The District also requested that plaintiffs withdraw Interrogatory No. 3, which was then pending in

---

[1]     *See also* Horse, SAU Interview (Sept. 7, 2017) at 9:14–9:37, 10:55–12:10; Gonzalez, SAU Interview at 10:30–10:50, 18:18–19:53.

accordance with the Doe discovery authorized by the Court[2] and sought the identity of the officer who conducted the search, as well as Claims 14, 15, and 16, which the District maintained were contradicted by the video. The District produced the Blue Plains video to plaintiffs on October 17, 2017, pursuant to a Protective Order [24]. On October 20, 2017, the District also produced the SAU investigative file for plaintiffs' consideration.

On October 26, 2017, counsel for plaintiffs wrote to counsel for the District, stating:

> Thank you for the opportunity to view the Blue Plains video and read IAD's report. We have completed our investigation, and we agree with you that the factual allegations need to be amended. We also intend to drop or modify several claims. We will do both of these things when we amend the complaint.

Email from Scott Michelman, ACLU, to Amanda Montee, Assistant Attorney General (Oct. 26, 2017) (Ex. D). Plaintiffs' counsel also agreed to withdraw the interrogatory seeking the name of the searching officer. *Id.*

The following week, on October 31, 2017, plaintiffs' counsel sent the District plaintiffs' proposed Second Set of Interrogatories, and requested the District's consent to another round of expedited discovery to identify John Doe defendants. The proposed interrogatories, specifically, Interrogatory No. 1(b), included a photograph of the officer who conducted the searches of Horse and Gonzalez, which

---

[2]     On September 18, 2017, this Court issued an Order [22] granting plaintiffs leave to serve interrogatories on the District for the limited purpose of identifying the "John Doe" defendants described in the Complaint. Interrogatory No. 3 sought "the name(s) and badge number(s) of the MPD member(s) who performed any of the searches on Plaintiffs Horse and/or Gonzalez described in ¶¶ 113-128 of the Complaint." Pls.' First Set of Interrog. to District [19-1].

had been captured as a screenshot from the Blue Plains video produced subject to the Protective Order. The interrogatory sought the identity of the person depicted in the screenshot.

Counsel for the District wrote to plaintiffs' counsel on November 9, 2017, stating again that the Blue Plains video contradicts plaintiffs' claims and explaining:

> On October 6, 2017, we wrote to inform you that we investigated the search allegations made by Shay Horse and Michael "Milo" Gonzalez in the Complaint, *see* ¶¶ 113–28, 198–206, and found that the video surveillance footage recorded at the facility where Mr. Horse and Mr. Gonzalez were processed (the Blue Plains Video) contradicts their accounts. We provided you the Blue Plains Video on October 17, 2017, subject to a Protective Order [24]. We brought this matter to your attention and provided the video so that you would have an opportunity review the evidence and remove the false allegations and claims from the Complaint.
>
> As you undoubtedly saw on the video, Mr. Horse and Mr. Gonzalez did not remove, or pull down, their pants for the searches. *Cf.* Compl. ¶ 115 ("Defendant Officer John Doe 150, who was wearing rubber gloves, ordered Mr. Horse, Mr. Gonzalez, and three other detainees to remove their pants."). They were not searched in a line with three other detainees. *Cf.* Compl. ¶ 124 ("Officer John Doe 150 then moved down the line and subjected the other three detainees there to similar treatment"); Shay Horse, ACLU Press Conference (June 21, 2017) ("[A] group of officers, maybe a dozen, lined up five male detainees, including myself."). And they were not subject to a visual or physical rectal examination. *Cf.* Compl. ¶¶ 117–22.

Letter from Eric Johnson, Assistant Attorney General, to Scott Michelman, ACLU (Nov. 6, 2017) (Ex. E). Plaintiffs' counsel responded:

> We have agreed to drop or modify claims 14-16 as you requested. We have not agreed that we will necessarily delete them all and assert no claim arising from the searches at the Blue Plains facility. *We agree that the video shows that not all of the allegations made in the original complaint were accurate*. However, we also think the video confirms

that our clients were subject to invasive and unjustified probing of [their] private [areas] that is actionable as excessive force. Therefore our current plan (subject to further research and further discussion with our clients) is to substantially revise but not eliminate the allegations concerning the individual who searched Mr. Horse and Mr. Gonzalez at the Blue Plains facility. As a result, each of claims 14 to 16 will be dropped or modified. We do not intend to drop all three. We agreed to drop Interrogatory 3 from our initial discovery because it referred to the current allegations of the complaint, which we agree are not entirely accurate. But we still have a need to identify the individual who searched Mr. Horse and Mr. Gonzalez at the Blue Plains facility, because we intend to modify but retain at least one claim against him.

Email from Scott Michelman, ACLU, to Amanda Montee, Matthew Blecher, and Eric Johnson, Assistant Attorneys General (Nov. 6, 2017) (emphasis added) (Ex. F). Ultimately, plaintiffs withdrew the proposed interrogatory seeking the identity of John Doe 150 and did not include it in Plaintiffs' Second Set of Interrogatories to the District [26-1].

**II.**   <u>Factual Allegations in Plaintiffs' First Amended Complaint</u>

Plaintiffs filed their First Amended Complaint [29] on January 3, 2018. The First Amended Complaint still includes one allegation that Horse and Gonzalez were unconstitutionally searched—a claim under 42 U.S.C. § 1983, alleging violation of plaintiffs' Fourth Amendment rights against Officer John Doe. However, the factual allegations in the First Amended Complaint differ markedly from those in the prior Complaint. Plaintiff Horse alleges that "Officer John Doe patted [him] down and then jabbed into [his] rectum, through his pants," and ordered Horse not to flinch. Am. Compl. ¶¶ 168–69. Plaintiff Gonzalez alleges "Officer John Doe reached inside [his] underwear and fondled his testicles … and

reached inside [his] underwear and put his finger into [his] rectum," while ordering Gonzalez not to resist. *Id.* ¶¶ 171–73.

## STANDARD OF REVIEW

### I.   Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a claim or complaint is appropriate when a party fails to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the factual allegations in the complaint must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### II.   Summary Judgment Under Federal Rule of Civil Procedure 56

"[W]hen 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b)(6), 'the motion must be treated as one for summary judgment [under Rule 56(a)].'" *Highland Renovation Corp. v. Hanover Ins. Grp.*, 620 F. Supp. 2d 79, 82 (D.D.C. 2009). Rule 56 requires courts to grant summary judgment when the "materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see George v. Leavitt*, 407 F.3d 405, 410

(D.C. Cir. 2005). The mere existence of a factual dispute does not preclude summary judgment; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if, under the substantive law applicable to the case, it can affect the outcome of the litigation. *Id.* And a dispute is "genuine" for summary judgment purposes if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Doe v. Dep't of the Treasury*, 706 F. Supp. 2d 1, 5 (D.D.C. 2009). Because plaintiffs would bear the burden of proof on a dispositive issue at trial, they bear the burden of production at the summary judgment stage to designate specific facts showing that there exists a genuine dispute requiring trial. *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 49 (D.D.C. 2012) (citing *Ricci v. DeStefano,* 557 U.S. 557, 129 (2009)). "Otherwise, the plaintiff could effectively defeat the 'central purpose' of the summary judgment device – namely, 'to weed out those cases insufficiently meritorious to warrant … trial' – simply by way of offering conclusory allegations, speculation, and argument." *Id.* (citing *Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999)).

## ARGUMENT

### I.   The Court Should Strike Horse's and Gonzalez's Search Allegations and Dismiss Claim 16.

#### A.   The Court May Strike Claims in an Amended Complaint that Contradict Allegations Originally Pled.

At the motion to dismiss stage, the factual allegations in the complaint must be taken as true, *Twombly*, 550 U.S. at 555, and "reconcilable 'small variations'"

between an original and amended complaint "are acceptable," *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013) (citation omitted), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015). "A plaintiff, however, may not plead facts in their amended complaint that contradict those in their original complaint." *Id.*

Under such circumstances, the Court may exercise its discretion to strike "changed and inconsistent factual allegations as false and sham." *See Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325–26 (Fed. Cir. 1998) (citations omitted) (finding district court did not err in striking factual allegations that were inconsistent between the complaint and amended complaint); *Clay v. Howard Univ.*, 128 F. Supp. 3d 22, 26 (D.D.C. 2015) ("The court does have the authority to strike obviously 'false and sham' allegations that have changed from the complaint to the amended complaint." (citation omitted)); *Hourani*, 943 F. Supp. 2d at 171 (dismissing amended complaint with prejudice based on inconsistencies but declining to impose Rule 11 sanctions); *see also Schwartz v. Esmark, Inc.*, No. 78-C-1909, 1980 U.S. Dist. LEXIS 10878, at *4 (N.D. Ill. March 31, 1980) (noting that "plaintiff could not, in good faith, have so diametrically reversed his recollection and position between the time of the filing of his original complaint and that of his second amended pleading" and striking paragraph from amended complaint).

## B. The Amended Complaint's Search Allegations Directly Contradict Those in the Original Complaint and Should be Stricken.

Plaintiffs have not simply changed their legal theory or reconciled small variations; they have changed their story. Plaintiffs no longer allege they were ordered to remove their pants, or that they pulled down their pants for the alleged

searches. *Compare* Compl. ¶ 115 ("Defendant Officer John Doe 150, who was wearing rubber gloves, ordered Mr. Horse, Mr. Gonzalez, and three other detainees to remove their pants.") *with* Am. Compl. ¶¶ 166–174. And in the initial complaint, Horse alleged John Doe 150 "put his finger into Mr. Horse's rectum, *through his underwear*," Compl. ¶ 117 (emphasis added), "an inch deep…and wiggled it around for several seconds," *id.* ¶ 118. Now, Horse alleges "Defendant Officer John Doe patted Mr. Horse down and then jabbed into Mr. Horse's rectum, *through his pants*." Am. Compl. ¶ 168 (emphasis added). Plaintiffs also no longer allege they were searched while standing together in a line of five arrestees. *Cf.* Compl. ¶ 124 ("Defendant Officer John Doe 150 then moved down the line and subjected the other three detainees there to similar treatment; Mr. Horse heard another detainee yelp).

Several other factual allegations that were included in plaintiffs' Complaint were removed from the First Amended Complaint. Plaintiffs no longer make the following allegations:

> 123. Defendant Officer John Doe 150 and other officers laughed at Mr. Gonzalez while this degrading search was performed.

> 124. Defendant Officer John Doe 150 did not change gloves when he moved from one individual to the next.

> 135. The manual rectal searches were performed in the presence of several other detainees and approximately five to ten other MPD officers, including at least one or two female officers.

Compl. [1].

Plaintiffs are undoubtedly aware of the significance of their allegations as they initially pled them; in fact, plaintiffs capitalized on the inflammatory nature of

the allegations to garner publicity for their lawsuit, to the detriment of MPD. *See, e.g.,* "Lawsuit Challenges Excessive Force, Manual Rectal Probing, and Denial of Food, Water, and Toilets, ACLU (June 21, 2017), *available at* https://www.aclu.org/news/aclu-dc-sues-dc-police-false-arrests-free-speech-violations-police-abuse-inauguration-day (accessed Mar. 12, 2018); "Lawsuit: Police Laughed While Rectally-Probing Inauguration Mass Arrest Group, Didn't Change Gloves," U.S. News & World Report (June 21, 2017), *available at* https://www.usnews.com/news/articles/2017-06-21/lawsuit-police-laughed-while-rectally-probing-inauguration-mass-arrest-group-didnt-change-gloves (accessed Mar. 12, 2018). And the press releases issued by the plaintiffs announcing their complaint and amended complaint indicate plaintiffs are aware of the significance of the changes in their allegations. *Compare* "Lawsuit Challenges Excessive Force, Manual Rectal Probing, and Denial of Food, Water, and Toilets," ACLU (June 21, 2017), *available at* https://www.aclu.org/news/aclu-dc-sues-dc-police-false-arrests-free-speech-violations-police-abuse-inauguration-day (accessed Mar. 12, 2018) *with* "ACLU-DC Names 27 Police Officers and Adds 10-Year-Old Boy as Plaintiff in Inauguration Day Lawsuit," ACLU (Jan. 3, 2018), *available at* https://www.aclu.org/news/aclu-dc-names-27-dc-police-officers-and-adds-10-year-old-boy-plaintiff-inauguration-day-lawsuit (accessed Mar. 24, 2018) (describing the nature of all of the claims in plaintiffs' First Amended Complaint except for plaintiffs' search allegations, which are not mentioned in the press release).

Plaintiffs abandoned their initial narrative—that they were lined up in a group of five, ordered to pull their pants down, and then subjected to humiliating, public manual rectal searches by an officer who did not changed gloves between searches—in lieu of one that would not be so easily disproven by the evidence (the Blue Plains video). As plaintiffs' counsel admitted, "the video shows that not all of the allegations made in the original complaint were accurate." Email from Scott Michelman, ACLU, to Amanda Montee, Matthew Blecher, and Eric Johnson, Assistant Attorneys General (Nov. 6, 2017) (Ex. F).

Plaintiffs have fundamentally changed their allegations. These differences are not "reconcilable small variations"; they are an attempt to evade the video evidence that demonstrates the original Complaint's allegations were not mere embellishment or innocent misrecollection, but pure fabrication. Accordingly, the Court should exercise its discretion to strike plaintiffs' search-related allegations and dismiss Claim 16 with prejudice.

## II.  In the Alternative, The Court Should Grant Officer John Doe Summary Judgment on Claim 16.

### A. The Blue Plains Video Disproves Plaintiffs' Excessive Force Allegations.

"[T]o survive a Fourth Amendment challenge, searches must be reasonable. This requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In the Amended Complaint, plaintiff Horse alleges that

the search he underwent at the MPD Training Academy was unreasonable because Officer John Doe "jabbed into Mr. Horse's rectum, through his pants." Am. Compl. ¶ 168. And plaintiff Gonzalez alleges that Officer John Doe "reached inside Mr. Gonzalez's underwear and fondled his testicles," and "put his finger into Mr. Gonzalez's rectum." *Id.* at ¶¶ 170–73. However, video evidence recorded at the scene disproves plaintiffs' allegations.

The search of Horse lasts only nineteen seconds. *See* Blue Plains video at 5:12–5:32. The angle on the Blue Plains video captures Horse in profile. *See id.* When the officer pats down Horse's back and backside, it is visible on the video. *See id.* The officer's hand pats down Horse's buttocks for only one second. *See id* at 5:30. It is apparent from the video that Officer John Doe did not "jab" a finger into Horse's rectum, through his pants. *Compare id.*, *with* Am. Compl. ¶ 168. After viewing the video, no reasonable jury could conclude otherwise.[3]

Although the entirety of Gonzalez's search is longer in duration, Officer John Doe only patted down Gonzalez's lower body for thirty-five seconds, a portion of which included Gonzalez repositioning himself. Blue Plains video at 8:50–9:25. When Officer John Doe pats down Gonzalez's buttocks area, Officer John Doe is standing behind Gonzalez and the camera view is taken from the front. *Id.* Gonzalez alleges that Officer John Doe "reached inside Mr. Gonzalez's underwear."

---

[3]    A brief review of basic human anatomy demonstrates the incredible nature of Horse's and Gonzalez's claims of "rectal" "jabbing." *See* Ex. G, HENRY GRAY, ANATOMY OF THE HUMAN BODY fig. 403 (rectum) (Warren H. Lewis, ed. 20th ed. 1918), *available at*: http://www.bartleby.com/107/illus403.html (last visited Mar. 29, 2018). Put simply, no reasonable jury could credit Horse's and Gonzalez's claims.

Am. Compl. ¶¶ 171–72. But in the video Officer John Doe's hand can be seen patting down the groin and buttocks area from outside Gonzalez's pants. *See* Blue Plains video at 9:13. No reasonable jury could find for Gonzalez on his Fourth Amendment claim based on the allegation that Officer John Doe reached inside his underwear and inserted his finger into Gonzalez's rectum.

## CONCLUSION

For the foregoing reasons, Claim 16 of plaintiffs' First Amended Complaint should be dismissed with prejudice or, in the alternative, this Court should grant judgment in favor of Officer John Doe on Claim 16.

Dated:  March 30, 2018.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Acting Chief, Equity Section

*/s/ Amanda J. Montee*
AMANDA J. MONTEE [1018326]
MATTHEW R. BLECHER [1012957]
ERIC U. JOHNSON [1030661]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORSE, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>            Defendants. | Civil Action No. 17-1216 (ABJ) |

## DEFENDANT OFFICER JOHN DOE'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE DISPUTE

Defendant Officer John Doe submits this statement of material facts as to which he contends there is no genuine dispute under Federal Rule of Civil Procedure 56(c) and Local Civil Rule 7(h), and states as follows:

1.      Shay Horse and Milo Gonzalez were arrested on January 20, 2017 in the District of Columbia (the District) by the Metropolitan Police Department (MPD). Am. Compl. ¶ 76.

2.      Horse and Gonzalez were transported together from the scene of their arrests to the MPD Police Academy, 4665 Blue Plains Drive, S.W., Washington, D.C., 20032. Am. Compl. ¶ 266; *see also* Blue Plains video (Ex. H).

3.      At the MPD Police Academy, plaintiffs were separately escorted into a building known as the Tactical Training Center (TTC), part of which was set up to look like a mock street. Blue Plains video at 00:10–2:20.

4.     After intake at TTC, Horse was escorted to an area designated for searches of prisoners by a uniformed officer wearing rubber gloves. Blue Plains video at 4:58–5:11.

5.     The uniform officer wearing rubber gloves patted down and visually inspected Horse for approximately 20 seconds. Blue Plains video at 5:12–5:32.

6.     The officer patted down Horse, paying attention to areas where contraband could be hidden. Blue Plains video at 5:12–5:32.

7.     When he entered TTC, plaintiff Horse was wearing jeans, a black sweatshirt, and a jacket; he remained fully-clothed for the duration of the search described in paragraphs 5 and 6 above. Blue Plains video at 4:58-5:32.

8.     The uniformed officer who patted down and visually inspected Horse did not insert his fingers into Horse's rectum. Blue Plains video at 5:12-5:32; Ex. G (anatomical illustration of rectum).

9.     After intake at TTC, plaintiff Gonzalez was directed to an area designated for searches of prisoners by an uninformed officer. Blue Plains video at 7:57-8:07.

10.     A uniform officer wearing rubber gloves patted down and visually inspected plaintiff Gonzalez for approximately 75 seconds. Blue Plains video at 8:08-8:49 (upper body); 8:50-9:25 (lower body).

11.     The officer patted down and visually inspected Gonzalez, paying attention to areas where contraband could be hidden. Blue Plains video at 8:50-9:25.

12.     When he entered TTC, plaintiff Gonzalez was wearing a dark jacket and long pants; he remained fully-clothed for the duration of the search described in paragraphs above. Blue Plains Video at 7:57-9:25.

13.     The uniformed officer who patted down and visually inspected Gonzalez did not reach into Gonzalez's underwear and fondle his testicles or insert his finger into Gonzalez's rectum. Blue Plains Video at 8:50-9:25; Ex. G (anatomical illustration of rectum).

Dated:  March 30, 2018.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Acting Chief, Equity Section

/s/ Amanda J. Montee
AMANDA J. MONTEE [1018326]
MATTHEW R. BLECHER [1012957]
ERIC U. JOHNSON [1030661]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-5691
(202) 741-8934 (fax)
amanda.montee@dc.gov

Attorneys for Defendant

# Exhibit C

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Office of the Attorney General



ATTORNEY GENERAL
KARL A. RACINE

Public Interest Division
Equity Section

October 6, 2017

**Via Electronic Mail**

Arthur B. Spitzer, Esq.
Scott Michelman, Esq.
Shana Knizhnik, Esq.
American Civil Liberties Union Foundation
of the District of Columbia
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008

Re:   Search Allegations in *Horse, et al. v. District of Columbia, et al.* (Civil Action
No. 17-1216 (ABJ))

Dear Counsel:

The District of Columbia has investigated the allegations of plaintiffs Shay Horse and Michael "Milo" Gonzalez regarding rectal searches contained in their Complaint, ¶¶ 113–28, 198–206, in *Horse v. District of Columbia,* Civil Action No. 17-1216 (ABJ). Video surveillance footage recorded at the facility where plaintiffs Horse and Gonzalez were processed does not support and, indeed, contradicts their allegations. Simply put, plaintiffs Horse and Gonzalez were not subject to manual rectal searches by the District of Columbia. We invite you to review the footage for yourselves. Once you have done so, we ask that plaintiffs Horse and Gonzalez withdraw their rectal search allegations, all claims and causes of action related to those allegations, and any related discovery requests, including Interrogatory 3.

In their Complaint, plaintiffs Horse and Gonzalez assert that they were the subjects of rectal searches by an unnamed District of Columbia defendant at what they believe to be the MPD Training Academy on Blue Plains Drive, S.W., in a "training area that was set up to look like a mock street." Compl. ¶¶ 113–14. Plaintiffs' description of the location corresponds to the setting at the MPD Training Academy where plaintiffs Horse and Gonzalez were processed and, while fully clothed,

Search Allegations in *Horse v. District of Columbia*
October 6, 2017
Page 2

received pat-down searches. No rectal search of them was conducted by any District defendant.

The video footage from the MPD Training Facility captures plaintiffs Horse and Gonzalez from the time they arrived until their release on January 21, 2017. When you watch that footage, you will see the following: (1) plaintiffs Horse and Gonzalez did not remove or pull down their pants for the searches. *Cf.* Compl. ¶ 115 ("Defendant Officer John Doe 150, who was wearing rubber gloves, ordered Mr. Horse, Mr. Gonzalez, and three other detainees to remove their pants."); (2) plaintiffs Horse and Gonzalez were not searched in a line with three other detainees. *Cf.* Compl. ¶ 124 ("Officer John Doe 150 then moved down the line and subjected the other three detainees there to similar treatment"); Shay Horse, ACLU Press Conference (June 21, 2017) ("[A] group of officers, maybe a dozen, lined up five male detainees, including myself"); (3) "Officer John Doe 150" did not "grab[ ] Mr. Horse's testicles and yank[ ] on them." *Cf.* Compl. ¶ 116; and (4) plaintiffs Horse and Gonzalez were not subject to a visual or physical rectal examination. *Cf.* Compl. ¶¶ 117–22, 198, 201, 204.

We propose the Parties meet and confer in person at OAG on October 10, 2017, where we will make the video footage available for your review. Once an agreed-upon protective order is in place, the District then will produce one copy of the video footage to counsel. We expect to have a copy of the footage ready to produce on October 13, 2017, and have enclosed a draft proposed stipulated protective order with this letter.

The video footage establishes that the allegations in ¶¶ 115–26, 198, 201, and 204 of plaintiffs' Complaint are unsupported and contrary to fact. Once you have had an opportunity to review the video footage, we request that plaintiffs withdraw those allegations and all related claims and discovery. Should plaintiffs not agree to do so by 1 p.m. on October 13, 2017, the District will pursue all its available legal remedies.

Please let us know when you are available to meet on October 10, 2017.

Sincerely,

KARL A. RACINE
Attorney General for the District of Columbia

By: */s/ Amanda J. Montee*
Amanda J. Montee
Assistant Attorney General

# Exhibit D

| From: | Scott Michelman <smichelman@acludc.org> |
|---|---|
| Sent: | Thursday, October 26, 2017 2:57 PM |
| To: | Montee, Amanda (OAG); Johnson, Eric (OAG) |
| Cc: | Art Spitzer; Shana Knizhnik; Elaine Stamp |
| Subject: | Horse v. D.C. -- proposal for new motion re discovery and amending the complaint |

Amanda –

Thank you for the opportunity to view the Blue Plains video and read IAD's report. We have completed our investigation, and we agree with you that the factual allegations need to be amended. We also intend to drop or modify several claims. We will do both these things when we amend the complaint.

We are still in the process of showing the photos to our clients and to witnesses in accordance with the protective order. We will send you next week a list of the Bates-stamp numbers of particular officers in your production whose names we would like you to provide (as agreed) because they were identified by one or more plaintiffs and/or witnesses.

In the meantime, our continuing investigation has yielded additional information to help us identify defendants. As we envisioned in August, we have a set of badge numbers, equipment numbers, and photographs of our own to ask you to match with officer names. We are in the process of finalizing that list and should have it by the end of next week. We would like to serve these as very simple discovery requests each of which will take (substantially) one of the following three forms: (a) "Identify the officer pictured in this photograph," (b) "Identify the officer whose badge number is XXX," or (c) "Identify the officer who wore/carried XXX piece of equipment numbered XXX on January 20, 2017 at the Incident (as defined in our prior Interrogatories)." We hope that such narrow requests will be a minimal burden on the Defendants and will not pose any privacy concerns, while enabling us to identify in the most targeted possible way the identities of defendants.

To enable us to obtain this discovery, to address your request to amend the complaint, and to set mutually agreeable deadlines thereafter, we propose the following:
1.      We serve, by email to you, "identification" interrogatories of the types described above, on or before Friday, November 3. These will not count against our interrogatory limit. You agree to respond in 30 days, by Monday, December 4.
2.      We request, by email to you on or before Friday, November 3, the officer names corresponding to specific Bates numbers from your binder. You agree to respond within 7 days, by Friday, November 10.
3.      We agree to withdraw interrogatory 3 (referring to the search described in the original complaint).
4.      We ask for 21 days after your next production (i.e., until December 26) to amend the complaint – which will include adding names of officers and dropping or modifying factual allegations and legal claims relating to the search at Blue Plains.
5.      We deliver back to you the binder with the photographs, the Blue Plains video, and the IAD report, on or before the day we file the amended complaint.
6.      We ask for 30 days (i.e., until January 25) for you to respond to the amended complaint.

Please let me know if these next steps and deadlines are agreeable to the Defendants, and we will formalize in a consent motion.

Thank you.
Scott

Scott Michelman
Senior Staff Attorney

1

ACLU of the District of Columbia
P.O. Box 11637
Washington, D.C. 20008
(202) 457-0800
smichelman@acludc.org

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

# Exhibit E

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## Office of the Attorney General



ATTORNEY GENERAL
KARL A. RACINE

**Public Interest Division**
**Equity Section**

November 6, 2017

**Via Electronic Mail**

Arthur B. Spitzer, Esq.
Scott Michelman, Esq.
Shana Knizhnik, Esq.
American Civil Liberties Union Foundation
  of the District of Columbia
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008

**Re:**   *Horse, et al. v. District of Columbia, et al.* (Civil Action No. 17-1216 (ABJ))

Counsel:

The District of Columbia writes in response to plaintiffs' proposed second set of interrogatories and further to our communications about the unfounded search allegations and claims made by plaintiffs Horse and Gonzalez.

We are surprised by your proposed Interrogatory No. 1(b), which includes a screenshot from the Blue Plains Video[1] and seeks the name and badge number of the officer depicted, whom you identify as the officer who "performed searches of Plaintiffs Horse and Gonzalez" at Blue Plains. *See* Pls.' Proposed Second Set of Interrog. to Def. District of Columbia, Interrog. No. 1(b). Our concerns are twofold.

First, any discovery related to the search claims in the Complaint (Claims 14–16) is not relevant because those claims are unfounded. On October 6, 2017, we wrote to inform you that we investigated the search allegations made by Shay Horse and Michael "Milo" Gonzalez in the Complaint, *see* ¶¶ 113–28, 198–206, and found that the video surveillance footage recorded at the facility where Mr. Horse and Mr. Gonzalez were processed (the Blue Plains Video) contradicts their accounts. We provided you the Blue Plains Video on October 17, 2017, subject to a Protective

---

[1]   The image appears to have been taken at approximately 12:56.

*Horse, et al. v. District of Columbia, et al.*
November 6, 2017
Page 2

Order [24]. We brought this matter to your attention and provided the video so that you would have an opportunity review the evidence and remove the false allegations and claims from the Complaint.

As you undoubtedly saw on the video, Mr. Horse and Mr. Gonzalez did not remove, or pull down, their pants for the searches. *Cf.* Compl. ¶ 115 ("Defendant Officer John Doe 150, who was wearing rubber gloves, ordered Mr. Horse, Mr. Gonzalez, and three other detainees to remove their pants."). They were not searched in a line with three other detainees. *Cf.* Compl. ¶ 124 ("Officer John Doe 150 then moved down the line and subjected the other three detainees there to similar treatment"); Shay Horse, ACLU Press Conference (June 21, 2017) ("[A] group of officers, maybe a dozen, lined up five male detainees, including myself."). And they were not subject to a visual or physical rectal examination. *Cf.* Compl. ¶¶ 117–22.

After reviewing the video, on October 26, 2017, you notified the District that you "agree … that the factual allegations need to be amended" and that you "intend to drop or modify several claims." *See* E-mail from Scott Michelman to Amanda J. Montee, *et al.* (Oct. 26, 2017 14:57 EDT). Plaintiffs therefore agreed to withdraw Interrogatory No. 3, which sought the name of the officer who searched Horse and Gonzalez at Blue Plains. *See id.* ("We agree to withdraw interrogatory 3 (referring to the search described in the original complaint)."). Yet plaintiffs now seek the very same information sought by the interrogatory plaintiffs withdrew less than two weeks ago. Given your agreement to amend the Complaint and withdraw Interrogatory No. 3, we see no good-faith basis for plaintiffs to continue to seek this information. Accordingly, we will not agree to plaintiffs' proposed Interrogatory No. 1(b).[2]

Second, and of equal if not greater concern, is plaintiffs' use of the Blue Plains Video in violation of the operative Protective Order [24]. The District provided plaintiffs with the Blue Plains Video (and, subsequently, with materials from the Metropolitan Police Department's Internal Affairs Bureau (IAB) Investigation into plaintiffs Horse and Gonzalez's allegations) for the limited purpose of considering the District's request that plaintiffs withdraw the search-related allegations and claims and Interrogatory No. 3. To that end, the Parties agreed upon—and the Court entered—a Stipulated Protective Order regarding the Blue Plains Video. The Stipulated Protective Order prohibits copying the video, *see* Stipulated Protective Order [24] ¶ 3, transmitting the video, *see id.* ¶ 2, and limits the video's use to plaintiffs' consideration of the District's request that plaintiffs withdraw the search-related allegations and claims, *see id.* ¶ 5. Plaintiffs' recent use of the Blue Plains

---

[2]     The District will provide a more complete response to plaintiff's discovery proposal in a separate communication.

*Horse, et al. v. District of Columbia, et al.*
November 6, 2017
Page 3

Video—capturing an image from the video, transmitting that image via electronic means, and (ultimately) using the image in connection with a discovery request—violates both the letter and spirit of the Stipulated Protective Order [24].

We therefore request that you immediately return the Blue Plains Video and IAB materials, destroy all copies of any of these materials (including, but not limited to, any screenshots of the video), and certify when such destruction is complete.[3] The District also renews its request that plaintiffs withdraw claims 14–16 as well as the related allegations in the Complaint. Should plaintiffs not agree to do so by 1 p.m. on November 8, 2017, the District will seek Court intervention.

If you would like to discuss these issues further, please do not hesitate to contact us.

Sincerely,

KARL A. RACINE
Attorney General for the District of Columbia

By: */s/ Eric U. Johnson*
Eric U. Johnson
Assistant Attorney General

---

[3]    We recognize that the District recently agreed to allow plaintiffs to maintain possession of the Blue Plains Video and IAB materials until plaintiffs amend the Complaint sometime after November 3, 2017. *See* E-mail (and e-mail chain) from Amanda J. Montee to Scott Michelman, *et al.* (Oct. 27, 2017, 14:10 EDT). However, that agreement was based upon plaintiffs' representation that the purpose of maintaining the materials was to aid plaintiffs in "deciding which claims to drop and which claims to modify in the amended complaint." *See* E-mail from Scott Michelman to Amanda J. Montee, *et al.* (Oct. 27, 2017, 12:00 EDT). Given plaintiffs' affirmative use of the Blue Plains Video for other purposes, and the actions described above that we view as being in violation of the Stipulated Protective Order [24], the District can no longer agree to allow plaintiffs to continue to maintain these materials.

# Exhibit F

| From: | Scott Michelman <smichelman@acludc.org> |
|---|---|
| Sent: | Monday, November 06, 2017 12:00 PM |
| To: | Montee, Amanda (OAG); Johnson, Eric (OAG); Jackson, Toni (OAG); Blecher, Matthew (OAG) |
| Cc: | Art Spitzer; Shana Knizhnik; Elaine Stamp |
| Subject: | RE: Horse v. D.C. -- proposal for new motion re discovery and amending the complaint |

Dear counsel,

This email responds both to Amanda's email and Eric's attached letter.

Regarding Eric's letter and proposed Interrogatory 1(b):

1. We do not see any inconsistency between our actions and the protective order. The protective order specifically allows the use of the video for purposes of this litigation. We did not share the video or any screenshot therefrom with anyone outside the scope of the protective order. Rather, we sent the information to you, who already had it. We do not think it is a reasonable reading of the order to suggest that we could not provide information to the source of the information itself.

2. We have agreed to drop or modify claims 14-16 as you requested. We have not agreed that we will necessarily delete them all and assert no claim arising from the searches at the Blue Plains facility. We agree that the video shows that not all of the allegations made in the original complaint were accurate. However, we also think the video confirms that our clients were subject to invasive and unjustified probing of private good that is actionable as excessive force. Therefore our current plan (subject to further research and further discussion with our clients) is to substantially revise but not eliminate the allegations concerning the individual who searched Mr. Horse and Mr. Gonzalez at the Blue Plains facility. As a result, each of claims 14 to 16 will be dropped or modified. We do not intend to drop all three. We agreed to drop Interrogatory 3 from our initial discovery because it referred to the current allegations of the complaint, which we agree are not entirely accurate. But we still have a need to identify the individual who searched Mr. Horse and Mr. Gonzalez at the Blue Plains facility, because we intend to modify but retain at least one claim against him. We had intended to review the materials provided under protective order again in the process of drafting our amended complaint, which is why we have not yet returned them (as Eric acknowledges in footnote 3 of his letter); the protective order states that we "must return the Blue Plains Video ... once counsel has determined how to respond" to the request to the drop claims 14-16. We believe that deciding how to modify our claims is part of "determin[ing] how to respond" to your request and that is why we still have the video (and the CD with investigative material). But we acknowledge the point is not free from doubt. If you insist, we will in the spirit of cooperation return the two disks provided under protective order. Please let us know if you still insist on immediate return. We trust this explanation covers our reason for including the picture of the searching officer as proposed Interrogatory 1(b). We also trust this explanation obviates the need for whatever "Court intervention" you were contemplating.

Regarding Interrogatories 4-6: Our goal with these questions is to determine which officers fired chemical irritants in order to corroborate what our clients have told us and what our other investigative avenues have revealed in order to minimize the chance that we would misidentify a defendant in the amended complaint. However, in order to address your concerns about scope, would you be amenable to our replacing proposed Interrogatories 4-6 with a single interrogatory listing particular officers by name, badge number, or helmet number, and asking you to simply confirm which of the indicated officers used a chemical irritant at the time and place of the kettle? (The reason for including stingballs is that, as we have learned more about the different chemicals, we have come to understand that some of what our clients experienced seems to have been pepper spray and some seems to have been the chemical irritant associated with stingballs.) That approach will help us name the right people and no others. Otherwise we might have to be overinclusive, which does not seem fair to the potential-defendant officers if it could have been avoided.

I can get you the identifiers for the new proposed interrogatory this afternoon. I will also know by then whether we are asking your consent to the third-party subpoena.

So, to recap, the questions we have are:

a. Do you now consent to Interrogatory 1(b)?
b. Do you insistent that we return the two disks under protective order this week?
c. Do you agree in principle to our proposed compromise regarding Interrgatories 4-6?

Thanks,
Scott


Scott Michelman
Senior Staff Attorney
ACLU of the District of Columbia
P.O. Box 11637
Washington, D.C. 20008
(202) 457-0800
smichelman@acludc.org

*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

**From:** Montee, Amanda (OAG) [mailto:amanda.montee@dc.gov]
**Sent:** Monday, November 6, 2017 9:38 AM
**To:** Scott Michelman <smichelman@acludc.org>; Johnson, Eric (OAG) <eric.johnson@dc.gov>; Jackson, Toni (OAG) <toni.jackson@dc.gov>; Blecher, Matthew (OAG) <matthew.blecher@dc.gov>
**Cc:** Art Spitzer <aspitzer@acludc.org>; Shana Knizhnik <sknizhnik@acludc.org>; Elaine Stamp <estamp@acludc.org>
**Subject:** RE: Horse v. D.C. -- proposal for new motion re discovery and amending the complaint

Scott,

We will provide partial consent to your proposed Plaintiffs' Second Set of Interrogatories to Defendant District of Columbia. We will consent to Interrogatory Nos. 1(a), 1(c), 2, and 3.

We will oppose Interrogatory Nos. 1(b), 4, 5, and 6. Interrogatory Nos. 4 and 5 request the name and badge numbers all or nearly all CDU MPD Officers who deployed O.C. spray in the area of the riots on January 20, 2017. Plaintiffs are only four individuals who, according to the Complaint, where sprayed one or two times. Further, plaintiffs have already had an opportunity to identify the officers who they allege sprayed them. The interrogatory is overbroad and unreasonable.

Interrogatory No. 6 seeks information that is not relevant; the officers who deployed stingballs are not relevant to plaintiffs' identification of John Doe defendants.

Regarding Interrogatory No. 1(b), please see the attached.

Thank you,

Amanda J. Montee
Assistant Attorney General
Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
amanda.montee@dc.gov
Phone: (202) 724-5691
Fax: (202) 741-8934

**Confidentiality Notice**: This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

**Metadata**: This e-mail transmission and any accompanying material may contain embedded metadata. Any included metadata is confidential or privileged information and is not intended to be viewed by a non-client recipient.

**From:** Scott Michelman [mailto:smichelman@acludc.org]
**Sent:** Thursday, November 02, 2017 6:13 PM
**To:** Montee, Amanda (OAG); Johnson, Eric (OAG); Jackson, Toni (OAG); Blecher, Matthew (OAG)
**Cc:** Art Spitzer; Shana Knizhnik; Elaine Stamp
**Subject:** RE: Horse v. D.C. -- proposal for new motion re discovery and amending the complaint

Amanda – Feel free to ignore my prior email about the binder and the extension – looking back, I realized you already agreed in your email of Friday afternoon the 27th. Sorry to trouble you with that.

As for the subpoena, we are working on the possibility that the witness will speak with us voluntarily, which we hope to learn on Monday. I'll send the subpoena to you Monday afternoon if we still want to seek your consent to include it in the discovery.

Thanks,
Scott


Scott Michelman
Senior Staff Attorney
ACLU of the District of Columbia
P.O. Box 11637
Washington, D.C. 20008
(202) 457-0800
smichelman@acludc.org

Exhibit G



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORSE, *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>            Defendants. | Civil Action No. 17-1216 (ABJ) |

## ORDER

Upon consideration of Officer John Doe's Motion to Dismiss plaintiffs' First Amended Complaint, plaintiffs' opposition, and the entire record, it is this _____ day of _____, 2018,

ORDERED, that the Motion to Dismiss is GRANTED, and it is further

ORDERED, that Claim 16 of Plaintiffs' First Amended Complaint is DISMISSED WITH PREJUDICE.

_____
THE HONORABLE AMY BERMAN JACKSON
Judge, United States District Court for the District of Columbia

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HORSE, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    Defendants. | Civil Action No. 17-1216 (ABJ) |

## ORDER

Upon consideration of Officer John Doe's Motion for Summary Judgment, plaintiffs' opposition, and the entire record, it is this _____ day of _____, 2018,

ORDERED, that the Motion for Summary Judgment is GRANTED, and it is further

ORDERED, that JUDGMENT is entered in favor of Officer John Doe on Claim 16 of Plaintiffs' First Amended Complaint.

_____
THE HONORABLE AMY BERMAN JACKSON
Judge, United States District Court for the District of Columbia